1  Derrick Talerico – Bar # 223763
   *dtalerico@wztslaw.com*

2  WEINTRAUB ZOLKIN TALERICO & SELTH LLP

3  11766 Wilshire Boulevard, Suite 730
   Los Angeles, CA 90025

4  Telephone: (424) 500-8552

5  [Proposed] General Bankruptcy Counsel to
   Chapter 11 Debtor and Debtor in Possession,

6  C.D.S. Moving Equipment, Inc.

7

8                    **UNITED STATES BANKRUPTCY COURT**

9            **CENTRAL DISTRICT OF CALIFORNIA – LOS ANGELES DIVISION**

10

11  In re:                                    Case No. 2:25-bk-21646-WB

12                                            Chapter 11
    C.D.S. MOVING EQUIPMENT, INC., dba
13  CDS PACKAGING SOLUTIONS,

14         Debtor and Debtor In Possession.   **EMERGENCY MOTION FOR ORDER (i)
                                              AUTHORIZING DEBTOR'S USE OF
15                                            CASH COLLATERAL PURSUANT TO 11
                                              U.S.C. § 363 AND FED. R. BANK. PROC.
16                                            4001, and (ii) DIRECTING TURNOVER
                                              OF ESTATE PROPERTY PURSUANT TO
17                                            11 U.S.C. § 542; MEMORANDUM OF
                                              POINTS AND AUTHORITIES IN
18                                            SUPPORT THEREOF**

19
                                              Hearing:
20                                            Date:      January 8, 2026
                                              Time:      10:00 a.m.
21                                            Courtroom: 1375
22                                                       255 E. Temple Street
                                                         Los Angeles, CA 90012
23

24         C.D.S. MOVING EQUIPMENT, INC., dba CDS PACKAGING SOLUTIONS, the

25  Chapter 11 debtor and debtor in possession ("**CDS**" or the "**Debtor**") in the above-captioned

26  bankruptcy case (the "**Bankruptcy Case**"), hereby moves this Court for an order: (1) authorizing

27  the use of cash collateral (as that term is defined by Section 363 of the Bankruptcy Code, "**Cash**

28  **Collateral**") on an interim basis in accordance with the budget attached as **Exhibit 1** (the

WEINTRAUB ZOLKIN TALERICO & SELTH LLP
11766 WILSHIRE BLVD., SUITE 730
LOS ANGELES, CA 90025

"*Budget*") to the concurrently filed Declaration of Michael Dennis Barwick (the "*Barwick Declaration*"), with the authority (i) to operate within a 15% variance of the budget set forth in the Budget, (ii) to carry forward to future months any budgeted but unused monies from previous months, without such carry forward counting towards the 15% variance; (2) setting a hearing for final approval of Cash Collateral use by the Debtor; (3) following such final hearing, approving the Debtor's use of Cash Collateral on a final basis; and (4) directing Pathward, National Assoc. ("*Pathward*") to turn over (i) receivables collected prepetition by Pathward that were not applied to Pathward's debt asa of the petition date, and (ii) receivables collected by postpetition by Pathward (the "*Motion*").

The Motion is brought pursuant to section 363(c)(2)(B) and (c)(3) and 542 of Title 11 of the United States Code (beginning at 11 U.S.C. §§ 101, et seq., the "*Bankruptcy Code*"), Rule 4001(b) of the Federal Rules of Bankruptcy Procedure (the "*Bankruptcy Rules*", and each individually, a "*Bankruptcy Rule*"), and Rule 4001-2 of the Local Bankruptcy Rules of the Central District of California (the "*Local Rules*", and each individually, a "*Local Rule*").

In order to prevent disruption to the Debtor's business operations, the Debtor requests that the Court grant this Motion on an emergency basis. The Debtor requires the immediate use of cash collateral of its secured creditor, Pathward, to fund expenses necessary to maintain its operation, including the payment of payroll.

This Motion is based on the attached Memorandum of Points and Authorities, and the concurrently filed Barwick Declaration.  Mr. Barwick is the Debtor's Chief Executive Officer.

Pursuant to Local Bankruptcy Rule 4001-2, the Debtor submits that the interim relief requested by the Motion does not contain any of the following provisions.

| Provision | Paragraph |
|---|---|
| Cross-Collateralization clauses | No |
| Provisions or findings of fact that bind the estate or all parties in interest with respect to the validity, perfection or amount of the secured party's prepetition lien or debt or the waiver of claims against the secured creditor. | No |
| Provisions or findings of fact that bind the estate or all parties in interest with respect to the relative priorities of the secured party's prepetition lien. | No |
| Provisions that operate, as a practical matter, to divest the debtor in possession of any discretion in the formulation of a plan or administration of the estate or to | No |

WEINTRAUB ZOLKIN TALERICO & SELTH LLP
11766 WILSHIRE BLVD., SUITE 730
LOS ANGELES, CA 90025

WEINTRAUB ZOLKIN TALERICO & SELTH LLP
11766 WILSHIRE BLVD., SUITE 730
LOS ANGELES, CA 90025

| | |
|---|---|
| limit access to the court to seek any relief under other applicable provisions of law. | |
| Waivers of 11 U.S.C. Section 506(c), unless the waiver is effective only during the period in which the debtor is authorized to use cash collateral or borrow funds | No |
| Releases of liability for the creditor's alleged prepetition torts or breaches of Contract | No |
| Waivers of avoidance actions arising under the Bankruptcy Code. | No |
| Provisions that deem prepetition secured debt to be postpetition debt or that use postpetition loans from a prepetition secured creditor to pay part or all of that secured creditor's prepetition debt | No |
| Provisions that provide disparate treatment for the professionals retained by a creditors' committee form that provided for the professional retained by the debtor with respect to a professional fee carve out | No |
| Provisions that prime any secured lien | No |
| Automatic relief from stay upon default, conversion to chapter 7, or appointment of a trustee | No |
| Waivers of procedural requirements, including those for foreclosure mandated under applicable non-bankruptcy law, and for perfection of replacement liens. | No |
| Adequate protection provisions which create liens on claims for relief arising under 11 U.S.C. Sections 506(c), 544, 545, 547, 548, and 549. | No |
| Waivers, effective on default or expiration, of the debtor's right to move for a court order pursuant to 11 U.S.C. Section 363(c)(2)(B) authorizing the use of cash collateral in the absence of the secured party's consent. | No |
| Provisions that grant a lien in an amount in excess of the dollar amount of cash collateral authorized under the applicable cash collateral order. | No |
| Provisions providing for the paying down of prepetition principal owed to a creditor. | No |
| Findings of fact on matters extraneous to the approval process. | No |

The Debtor respectfully requests that the Court enter an order granting the Motion, substantially in the form attached hereto as **Exhibit 2**.

Dated:  January 7, 2026                              **WEINTRAUB ZOLKIN TALERICO & SELTH LLP**


By: _/s/ Derrick Talerico_____
        Derrick Talerico
        [Proposed] General Bankruptcy Counsel for
        Chapter 11 Debtor and Debtor in Possession,
        C.D.S. MOVING EQUIPMENT, INC.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION

Debtor brings this motion on an emergency basis to obtain Court authority for use of Cash Collateral and for turnover of estate assets. The Debtor requires use of Cash Collateral to fund its operations including Cash Collateral in the possession of Pathward. Any disruption to its business will cause severe harm to the estate and creditor body.

### II.    JURISDICTION

This Court has jurisdiction to consider the Motion under 28 U.S.C. §§ 157 and 1334.   This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (M) and (O).  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

### III.    COMMENCEMENT OF BANKRUPTY CASE

The Debtor's CEO, Dennis Barwick, commenced this Bankruptcy Case by filing an emergency petition for relief under Chapter 11 of the Bankruptcy Code on December 29, 2025 (the "**Petition Date**"). Following a hearing on an Order to Show Cause re Dismissal due to Debtor's failure to be represented by counsel, the Debtor retained Weintraub Zolkin Talerico & Selth LLP. The Debtor continues to carry out its business operations and manage its financial affairs as a Debtor-in-Possession pursuant to 11 U.S.C. §§ 1107 and 1108. Debtor's operations are currently limited because it is not authorized to use cash collateral and does not have any meaningful unencumbered cash with which to operate. No chapter 11 trustee, examiner, or committee has been appointed in the Bankruptcy Case.

### IV.    STATEMENT OF FACTS

#### a.    History of the Debtor and Its Business

CDS is a California-based operating company that has served the moving, storage, logistics, and packaging industries for nearly fifty years. Over that time, CDS built a reputation as a reliable supplier of essential packaging materials, equipment, and logistics support to customers across multiple states. The company's longevity was achieved through consistent reinvestment, long-standing vendor relationships, and a workforce deeply experienced in its operations.

WEINTRAUB ZOLKIN TALERICO & SELTH LLP
11766 WILSHIRE BLVD., SUITE 730
LOS ANGELES, CA 90025

As of the petition date, CDS employs approximately sixty-five employees, many of whom have been with the company for years and whose livelihoods depend on the continuity of CDS's operations. CDS also maintains an established base of repeat customers and vendors who rely upon the company for timely delivery of mission-critical products. Prior to the events described below, CDS remained operationally viable, with active customer demand, functioning facilities, and a workforce prepared to continue servicing the business.

The disruption that ultimately forced CDS to seek relief under Chapter 11 was not caused by a collapse in demand, mismanagement, or an absence of operational capability. Rather, it arose from a sudden and sustained liquidity crisis fueled by the breakdown of Debtor's asset-based lending facility with Pathward.

Despite holding first-priority liens on substantially all of the Debtor's assets and exercising daily dominion over CDS's cash through a lockbox and sweep structure, Pathward materially restricted and, at times, refused to advance funds necessary to meet ordinary-course operating expenses, claiming CDS was "out of formula," terminating Pathward's obligation to turn over any of the receivables it was collecting or adequately advancing on new receivables that were generated.

This imbalance—where Pathward swept substantially all cash proceeds while declining to fund operating needs—placed CDS in an untenable position. The company was forced to curtail operations and choose between strict compliance with lender controls and the basic requirements of sustaining operations, employees, and customer commitments. Over time, this funding refusal disrupted vendor confidence, constrained inventory availability, and impaired the Debtor's ability to fully meet market demand, despite the underlying business remaining sound. From the height of its outstanding debt of approximately $3.6 million in June/July 2025, at the time the bankruptcy was filed Pathway had reduced its debt to $2,400,962.73, but CDS was out of air.

CDS commenced this case to stabilize operations, preserve jobs, protect enterprise value. With access to working capital, CDS can restore normalized purchasing, rebuild inventory levels, reaffirm vendor relationships, and continue serving its customers while pursuing a restructuring or recapitalization that maximizes value for the estate.

WEINTRAUB ZOLKIN TALERICO & SELTH LLP
11766 WILSHIRE BLVD., SUITE 730
LOS ANGELES, CA 90025

The Debtor's CEO, Dennis Barwick, together with the Debtor's financial consultants, Integrated Consulting Services, LLC (retained at the direction of Pathward), prepared the 13-week Budget attached to the Barwick Declaration as **Exhibit 1**. The Budget reflects the following: (1) end of the Compton lease and start of new Compton lease at new facility in April; (2) combining the Sacramento and Hayward locations; (3) deferral of January rent to end of lease for Las Vegas and Sacramento/Hayward; (4) collection of $300,000 from post-petition receivables held by Pathward; application of approximate $50,000 credit owed to Debtor from IT software firm against monthly fees; (5) steady growth of inventory and sales to meet backlog, current, and projected demand.

## V.    LEGAL AUTHORITY

### A.    Relief is Justified on an Emergency Basis

By Bankruptcy Code section 363(c)(3), Congress recognized that preliminary hearings on cash collateral would frequently be held on an emergency basis by stating therein that such hearing "shall be scheduled in accordance with the needs of the debtor". 11 U.S.C. § 363(c)(3). Courts also have recognized that emergency relief on the use of cash collateral is necessary after a case is filed. *In re Center Wholesale, Inc.*, 759 F. 2d 1440, 1444 (9th Cir. 1985) ("We realize that 'in certain circumstances the entire reorganization effort may be thwarted if emergency relief is withheld' and that reorganization under the Bankruptcy Code 'is a perilous process, seldom more so than at the outset of the proceedings when the debtor is often without sufficient cash flow to fund essential business operations.' … It is for this very reason that Congress specified that hearings concerning the use of cash collateral 'shall be scheduled in accordance with the needs of the debtor.' "); *In re Sullivan Ford Sales*, 2 B.R. 350, 355 (Bankr.D.Me.1980).

In this instance, the Debtor requires immediate use of the Cash Collateral in order to fund its operations, preserve and maintain value of its business and thereby avoid irreparable harm to its ability to reorganize. Without this relief, the Debtor's business operations will cease and its remaining assets, its inventory and receivables, will decline in value precipitously. On these facts and circumstances good cause exists for an expedited hearing on limited notice.

WEINTRAUB ZOLKIN TALERICO & SELTH LLP
11766 WILSHIRE BLVD., SUITE 730
LOS ANGELES, CA 90025

**B.** **The Debtor Should be Authorized to Use Cash Collateral Pursuant to 11 U.S.C. § 363 to Operate, Maintain, and Preserve Assets of the Estate**

The Debtor's use of property of the estate is governed by Section 363 of the Bankruptcy Code. Section 363(c)(1) provides in pertinent part:

> If the business of the debtor is authorized to be operated under section … 1108… of this title and unless the court orders otherwise, the trustee may enter into transactions, including the sale or lease of property of the estate, in the ordinary course of business, without notice or a hearing, and may use property of the estate in the ordinary course of business without notice or a hearing.

11 U.S.C. § 363(c)(1). A debtor in possession has all of the rights and powers of a trustee with respect to property of the estate, including the right to use property of the estate in compliance with Section 363. *See* 11 U.S.C. § 1107(a).

"Cash collateral" is defined as "cash, negotiable instruments, documents of title, securities, deposit accounts or other cash equivalents in which the estate and any entity other than the estate have an interest…" 11 U.S.C. § 363(a). Section 363(c)(2) establishes a special requirement with respect to "cash collateral," providing that the trustee or debtor in possession may use "cash collateral" under subsection (c)(1) if "each entity that has interest in such cash collateral consents; or . . . the court, after notice and a hearing, authorizes such use, sale or lease." *See* 11 U.S.C. § 363(c)(2)(A) and (B).

Where a debtor is operating a business, it is extremely important that access to cash collateral be allowed to facilitate the goal of reorganization, as "the purpose of Chapter 11 is to rehabilitate debtors and generally access to cash collateral is necessary to operate a business". *In re Dynaco Corp.*, 162 B.R. 389, 394 (Bankr. D.N.H. 1993), quoting *In re Stein*, 19 B.R. 458, 459 (Bankr. E.D. Pa. 1982). It is in the best interest of the estate and its creditors to continue to maintain the Debtor's business operations, as liquidation would generate little to no recovery for general unsecured creditors and funding for the reorganization is entirely dependent upon ongoing business operations.

To obtain court authorization to use cash collateral, a debtor must establish that the "interest" of creditors holding liens on the subject collateral will remain "adequately protected." 11 U.S.C. § 363(e).  Pursuant to *United States v. Timbers of Inwood Forest*, 484 U.S. 365, 108 S. Ct 626 (1988), the "interest in property" entitled to adequate protection under 11 U.S.C. §363(e) is no more or less than the "value of the collateral" that is subject to the secured creditor's lien. under the *Timbers*' holding, a debtor is merely required to show that the secured creditor's collateral will not decline in value prospectively to establish "adequate protection." *Timbers*, 484 U.S. 365; *In Re Ledgemere Land Corp.*, 116 B.R. 338, 343 (Bankr. D. Mass. 1990) (so long as the receivables being collected and used by the debtor are being replaced by sufficient new receivables in which the creditor is granted a security interest, the creditor is adequately protected); *In re Johnson*, 90 B.R. 973, 978 (Bankr. D. Minn. 1988) (since value of the collateral has not declined, the bank is not impaired and is not entitled to receive adequate protection payments; *In re Century Inv. Fund VII, Ltd. Partnership*, 96 B.R. 884, 887 (Bankr. E.D. Wis. 1989) (where value appears to be stable, creditor is not entitled to adequate protection payments); *In re Kessler*, 86 B.R. 134, 136 (Bankr. C.D. Ill. 1988) (under *Timbers*, the sellers are not entitled to adequate protection payments, as there was no showing the 80-acre tract was depreciating in value); *In re Anderson*, 88 B.R. 877, 889 (Bankr. N.D. Ind. 1988) (secured creditor required to show a necessity for adequate protection by showing a decline in asset value from the petition date); *In re Mccombs Properties VI, Ltd.,* 88 B.R. 261 (Bankr. C.D. Cal. 1988); *In re Elmore*, 94 B.R. 670 (Bankr. C.D. Cal. 1988). Under the facts present here, allowing the Debtor to continue operations through the use of Cash Collateral as proposed herein satisfies this standard.

**C.    Pathward's Interests Shall be Protected by a Replacement Lien in the Debtor's Post-Petition Cash, Accounts Receivable, Inventory and the Proceeds Thereof**

Section 361 of Bankruptcy Code explicitly provides that "adequate protection may be provided by . . . [a] replacement lien to the extent that such . . . use [of cash collateral] results in a decrease in the value of such entity's interest in such property." 11 U.S.C. § 361(2); *See Timbers*, 484 U.S. at 370. With respect to the security interest asserted by FBOL in the Debtor's assets, FBOL will be granted a replacement lien in the Debtor's post-petition cash, accounts receivable, inventory, and the proceeds thereof, to the same extent, validity, and priority as any lien held by

WEINTRAUB ZOLKIN TALERICO & SELTH LLP
11766 WILSHIRE BLVD., SUITE 730
LOS ANGELES, CA 90025

FBOL as of the Petition Date, to the extent cash collateral is actually used by the Debtor.

However, since the function of adequate protection is only to <u>preserve</u> and not to <u>increase</u> the collateral subject to a secured creditor's interest, any additional value created through the Debtor's use of the Cash Collateral, whether in the form of inventory, accounts receivable or cash, will <u>not</u> be subject to a replacement lien, but will instead constitute an asset of the estate that <u>all</u> creditors will ultimately be able to look for payment. *See*, e.g., *Qmect, Inc. v. Burlingame Capital Partners II, L.P.*, 373 B.R. 682 (Bankr. N.D. Ca. 2007); ("the purpose of adequate protection is to protect lenders from diminution in the value of their collateral", and not to enhance their position). Thus, each of the respective Secured Creditors' replacement liens should be limited to the amount of any diminution in its interest in Cash Collateral in existence as of the Petition Date.

Although the grant of post-petition replacement liens will, in concept, ensure the preservation of Pathward's interests in Cash Collateral, in reality, the liens will perform this function only if the Debtor, in fact, generates at least one dollar of value for every dollar of Cash Collateral expended. The Budget indicates that the Debtor will operate cash flow positive during the budgeted period on a monthly basis (during the month there are ebbs and flows of cash position as inventory is acquired and one-time monthly expenses such as rent and insurance are paid).

The Debtor believes that the projections of its business operations as set forth in the Budget are reasonable.  The business assumptions underlying the operations projected in the Budget are essentially in accordance with the Debtor's historical experience, as adjusted to take into account recent or projected events and negotiated concessions (certain landlords have agreed to defer January rent to the end of the lease term).  In addition, Debtor estimates the value of its inventory at the Petition Date at $2,681,130, and that it will maintain that value through the budgeted period. Accordingly, the Debtor believes that the budget establishes that the proposed replacement liens being granted to Pathward will adequately protect its interests.

> **D.**     **Pathward is Required to Turn Over to Debtor Cash Collateral Collected After the Petition Date and Cash Collateral Collected Prepetition that was not Applied to its Debt as of the Petition Date.**

Accounts receivable as of the Petition Date are assets of the Debtor's estate. As such, the cash collected from those receivables is also estate assets, although they remain the cash collateral

WEINTRAUB ZOLKIN TALERICO & SELTH LLP
11766 WILSHIRE BLVD., SUITE 730
LOS ANGELES, CA 90025

of Pathward. Although Debtor does not know the exact amount of pre-petition receivables collected by Pathward since the Petition Date, considering collections were approximately $250,000 per week prior to the Petition Date, Debtor estimates Pathward has collected at least $300,000 of estate assets since the Petition Date. Pathward should be ordered to turn over to the Debtor all receivables collected since the Petition Date.

Section 541 provides:

> (a)The commencement of a case under section 301, 302, or 303 of this title creates an estate. Such estate is comprised of all the following property, wherever located and by whomever held:
> (1) Except as provided in subsections (b) and (c)(2) of this section, all legal or equitable interests of the debtor in property as of the commencement of the case.

Section 542 provides:

> (a)Except as provided in subsection (c) or (d) of this section, an entity, other than a custodian, in possession, custody, or control, during the case, of property that the trustee may use, sell, or lease under section 363 of this title, or that the debtor may exempt under section 522 of this title, shall deliver to the trustee, and account for, such property or the value of such property, unless such property is of inconsequential value or benefit to the estate.

Citing to the U.S. Supreme Court, the Ninth Circuit has confirmed that property of the estate includes property in which a secured creditor holds a security interest at the time the bankruptcy petition is filed. "The property of the debtor's estate includes property in which a creditor has a security interest. *United States v. Whiting Pools, Inc.*, 462 U.S. 198, 203, 76 L. Ed. 2d 515, 103 S. Ct. 2309 (1983); 11 U.S.C. § 541(a)(1) (property of the estate includes all legal or equitable interests of the debtor in property as of the commencement of the case). If a debtor has an interest in property, the trustee can order the turnover of the property to the estate.  11 U.S.C. § 542." *Whiting Pools, 462 U.S. at 209.*" *In re Contractors Equip. Supply Co.*, 861 F.2d 241, 244 (9th Cir. 1988). The Debtor's receivables that existed as of the Petition Date were assets of the estate. By collecting on those estate assets post-petition, Pathward does not convert those estate assets to non-estate assets. Pathward must account for the receivables collected post-petition and turn over these estate assets to the Debtor.

WEINTRAUB ZOLKIN TALERICO & SELTH LLP
11766 WILSHIRE BLVD., SUITE 730
LOS ANGELES, CA 90025

Furthermore, Pathward must also account for and turn over receivables collected pre-petition that had not yet been applied to its debt as of the Petition Date pursuant to U.S. Supreme Court precedent. "Property of the estate encompasses property of the debtor that was seized by a creditor before the petition for reorganization was filed." *Whiting Pools, 462 U.S. at 209.*" *In re Contractors Equip. Supply Co.*, 861 F.2d 241, 244 (9th Cir. 1988)." *See also, In re Southland + Keystone*, 132 B.R. 632, 638 (B.A.P. 9th Cir. 1991) ("…property of a debtor that is seized by a creditor prior to the debtor filing bankruptcy is property of the estate."). Pathward collected Debtor's receivables in a lockbox from which it would sweep its these collections to its own accounts. To the extent there were funds in the lockbox as of 9:57 a.m. on the Petition Date, those funds are property of the estate and must be turned over to the Debtor.

## VI.    CONCLUSION

For the foregoing reasons, the Debtor respectfully requests that the Motion be granted. Debtor should be authorized to use cash collateral on an interim basis and a hearing set to approve use of cash collateral on a final basis. The Debtor also requests that Pathward be ordered to account for (i) funds in the lockbox as of 9:57 a.m. on the Petition Date and (ii) all receivables collected from and after the Petition Date, and ordered to turn over all such funds to the Debtor. Finally, the Debtor requests that Pathward be ordered to immediately turn over any and all receivables collected going forward. The Debtor requests the Court approve an Order substantially in the form attached hereto as **Exhibit 1**.

Dated:  January 7, 2026                    **WEINTRAUB ZOLKIN TALERICO & SELTH LLP**


By  */s/ Derrick Talerico*
     Derrick Talerico
     [Proposed] General Bankruptcy Counsel for
     Chapter 11 Debtor and Debtor in Possession,
     C.D.S. MOVING EQUIPMENT, INC.

# EXHIBIT 1

**EXHIBIT 1 - Page 12**

1
Derrick Talerico – Bar # 223763
*dtalerico@wztslaw.com*

2
WEINTRAUB ZOLKIN TALERICO & SELTH LLP

3
11766 Wilshire Boulevard, Suite 730
Los Angeles, CA 90025

4
Telephone: (424) 500-8552

5
[Proposed] General Bankruptcy Counsel to

6
Chapter 11 Debtor and Debtor in Possession,
C.D.S. Moving Equipment, Inc.

7

8
### UNITED STATES BANKRUPTCY COURT

9
### CENTRAL DISTRICT OF CALIFORNIA – LOS ANGELES DIVISION

10

11
In re:

12
C.D.S. MOVING EQUIPMENT, INC., dba
CDS PACKAGING SOLUTIONS,

13

14
            Debtor and Debtor In Possession.

15

16

17

18

19

20

Case No. 2:25-bk-21646-WB

Chapter 11

**ORDER GRANTING INTERIM USE OF CASH COLLATERA; SETTING FINAL HEARING ON USE OF CASH COLLATERAL, AND DIRECTING TURNOVER OF ESTATE PROPERTY**

Hearing:
Date:          January 8, 2026
Time:         10:00 a.m.
Courtroom: 1375
                    255 E. Temple Street
                    Los Angeles, CA 90012

21

22
        A hearing was held on December 8, 2026 (the "***Hearing***") on Debtor's Emergency Motion

23
for Use of Cash Collateral and for Turnover of Estate Property (the "***Motion***") [Dkt. ____]. The

24
Court, having considered the Motion and other documents filed in support of the Motion, the

25
arguments and representations of counsel at the hearing on the Motion, finding notice of the Hearing

26
proper, and good cause appearing therefor,

27
        **IT IS HEREBY ORDERED** that:

28
        1.        The Motion is granted;

2.      Debtor is authorized to use cash collateral on an interim basis as set forth in the Motion and the Budget attached thereto from January 8, 2026 through _____;

3.      Pathward, National Assoc. ("**Pathward**") is granted post-petition liens as set forth in the Motion, to the extent Debtor uses Pathward's cash collateral, from January 8, 2026 through _____;

4.      Pathward is ordered to provide an accounting of all amounts held in the CDS lockbox as of December 29, 2025;

5.      Pathward is ordered to provide an accounting of all of Debtor's receivables collected from December 29, 2025 through the date of this Order;

6.      Pathward is ordered to immediately turn over to Debtor, for Deposit in Debtor's DIP account, the amounts set forth in the accountings above by no later than January 11, 2026.

###

WEINTRAUB ZOLKIN TALERICO & SELTH LLP
11766 WILSHIRE BLVD., SUITE 730
LOS ANGELES, CA 90025