Derrick Talerico – Bar # 223763
dtalerico@wztslaw.com
WEINTRAUB ZOLKIN TALERICO & SELTH LLP
11766 Wilshire Boulevard, Suite 730
Los Angeles, CA 90025
Telephone: (424) 500-8552

[Proposed] General Bankruptcy Counsel to
Chapter 11 Debtor and Debtor in Possession,
C.D.S. Moving Equipment, Inc.

# UNITED STATES BANKRUPTCY COURT
## CENTRAL DISTRICT OF CALIFORNIA – LOS ANGELES DIVISION

| | |
|---|---|
| In re:<br><br>C.D.S. MOVING EQUIPMENT, INC., dba CDS PACKAGING SOLUTIONS,<br><br>Debtor and Debtor In Possession. | Case No. 2:25-bk-21646-WB<br><br>Chapter 11<br><br>**OMNIBUS DECLARATION OF MICHAEL DENNIS BARWICK IN SUPPORT OF DEBTOR'S FIRST DAY MOTIONS**<br><br>Hearing:<br>Date:    January 7, 2026<br>Time:    10:00 a.m.<br>Courtroom: 1375<br>          255 E. Temple Street<br>          Los Angeles, CA 90012<br><br>Hon. Julia W. Brand |

I, MICHAEL DENNIS BARWICK, hereby declare:

1. I am an individual over the age of eighteen and the President and Chief Executive Officer of C.D.S. MOVING EQUIPMENT, INC., dba CDS PACKAGING SOLUTIONS, the Chapter 11 debtor and debtor in possession ("***CDS***" or the "***Debtor***") herein.. I am the Chief Executive Officer of CDS. Each of the facts contained in this declaration is based upon my personal knowledge and, if called as a witness, I could and would competently testify thereto.

2. The Debtor commenced this Bankruptcy Case by filing a petition for relief under Chapter 11 of the Bankruptcy Code on December 29, 2025 (the "**Petition Date**"). The Debtor continues to carry out its business operations and manager its financial affairs as a Debtor in Possession pursuant to 11 U.S.C. §§ 1107 and 1108. No trustee, examiner or committee has been appointed in the Bankruptcy Case.

**General Background**

3. CDS is a California-based operating company that has served the moving, storage, logistics, and packaging industries for nearly fifty years. Over that time, CDS built a reputation as a reliable supplier of essential packaging materials, equipment, and logistics support to customers across multiple states. The company's longevity was achieved through consistent reinvestment, long-standing vendor relationships, and a workforce deeply experienced in its operations.

4. As of the petition date, CDS employs approximately sixty-five employees, many of whom have been with the company for years and whose livelihoods depend on the continuity of CDS's operations. CDS also maintains an established base of repeat customers and vendors who rely upon the company for timely delivery of mission-critical products. Prior to the events described below, CDS remained operationally viable, with active customer demand, functioning facilities, and a workforce prepared to continue servicing the business.

5. The disruption that ultimately forced CDS to seek relief under Chapter 11 was not caused by a collapse in demand, mismanagement, or an absence of operational capability. Rather, it arose from a sudden and sustained liquidity crisis fueled by the breakdown of Debtor's asset-based lending facility with Pathward, National Assoc. ("**Pathward**").

6. Despite holding first-priority liens on substantially all of the Debtor's assets and exercising daily dominion over CDS's cash through a lockbox and sweep structure, Pathward materially restricted and, at times, refused to advance funds necessary to meet ordinary-course operating expenses, claiming CDS was "out of formula," terminating Pathward's obligation to turn over any of the receivables it was collecting or adequately advancing on new receivables that were generated.

7. This imbalance—where Pathward swept substantially all cash proceeds while

declining to fund operating needs—placed CDS in an untenable position. The company was forced to curtail operations and choose between strict compliance with lender controls and the basic requirements of sustaining operations, employees, and customer commitments. Over time, this funding refusal disrupted vendor confidence, constrained inventory availability, and impaired the Debtor's ability to fully meet market demand, despite the underlying business remaining sound. From the height of its outstanding debt of approximately $3.6 million in June/July 2025, at the time the bankruptcy was filed Pathway had reduced its debt to $2,400,962.73, but CDS was out of air.

8. CDS commenced this case to stabilize operations, preserve jobs, protect enterprise value. With access to working capital, CDS can restore normalized purchasing, rebuild inventory levels, reaffirm vendor relationships, and continue serving its customers while pursuing a restructuring or recapitalization that maximizes value for the estate.

### Emergency Motions

9. I make this Declaration in support of the Debtor's emergency motions filed concurrently herewith:

    a. *Emergency Motion for Order (i) Authorizing Debtor's Use of Cash Collateral Pursuant to 11 U.S.C. § 363 and Fed. R. Bank. Proc. 4001; and Directing Turnover of Estate Property Pursuant to 11 U.S.C. § 542* (the "**Cash Collateral Motion**"); and

    b. *Emergency Motion for Order Limiting Notice and Related Relief* (the "**Limit Notice Motion**").

collectively, the "**First Day Motions**"). Unless otherwise defined, all capitalized terms herein shall have the same meanings as in the applicable First Day Motions.

### Cash Collateral Motion

10. I, together with the Debtor's financial consultants, Integrated Consulting Services, LLC (retained at the direction of Pathward), prepared the 13-week Budget attached as **Exhibit 1**. The Budget reflects the following: (1) end of the Compton lease and start of new Compton lease at new facility in April; (2) combining the Sacramento and Hayward locations; (3) deferral of

January rent to end of lease for Las Vegas and Sacramento/Hayward; (4) collection of $300,000 from post-petition receivables held by Pathward; application of approximate $50,000 credit owed to Debtor from IT software firm against monthly fees; (5) steady growth of inventory and sales to meet backlog, current, and projected demand.

11. I believe that the projections of Debtor's business operations as set forth in the Budget are reasonable. The business assumptions underlying the operations projected in the Budget are essentially in accordance with the Debtor's historical experience, as adjusted to take into account recent or projected events and negotiated concessions (certain landlords have agreed to defer January rent to the end of the lease term). In addition, Debtor estimates the value of its inventory at the Petition Date at $2,681,130, and that it will maintain that value through the budgeted period. Accordingly, the Debtor believes that the budget establishes that the proposed replacement liens being granted to Pathward will adequately protect its interests.

12. Both pre-petition and post-petition, Pathward collected Debtor's receivables in a lockbox from which it would sweep its these collections to its own accounts. Although Debtor does not know the exact amount of pre-petition receivables collected by Pathward since the Petition Date, considering collections were approximately $250,000 per week prior to the Petition Date, Debtor estimates Pathward has collected at least $300,000 of estate assets since the Petition Date.

**Limit Notice Motion**

13. I estimate the Debtor has approximately 215 creditors; requiring the Debtor to give notice to all of these parties will impose burdensome administrative costs upon the Debtor. Limiting notice in the fashion described in the Limit Notice Motion will prevent the unnecessary waste of time and resources required to serve notice of certain pleadings and other documents on all creditors and interest holders, and allow the Debtor to administer the Estate in a more efficient manner. [

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed this 7th day of January 2026 at Los Angeles, California.

Michael Dennis Barwick

# EXHIBIT 1

Case 2:25-bk-21646-WB    Doc 27    Filed 01/07/26    Entered 01/07/26 14:14:02    Desc
Main Document    Page 6 of 8

13 Week Budget

**CDS Packaging**
**Weekly Cash Flow Forecast**
**January 7, 2026**

| | | Projected | Projected | Projected | Projected | Projected | Projected | Projected | Projected | Projected | Projected | Projected | Projected | Projected | Projected |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 5 | Week ending ----> | 1/9/26 | 1/16/26 | 1/23/26 | 1/30/26 | 2/6/26 | 2/13/26 | 2/20/26 | 2/27/26 | 3/6/26 | 3/13/26 | 3/20/26 | 3/27/26 | 4/3/26 | 1/9-4/3/26 |
| 7 | *Operating Cash Flow (enter as +)* | | | | | | | | | | | | | | |
| 8 | Cash receipts from A/R collections | 100,000 | 250,000 | 250,000 | 300,000 | 400,000 | 450,000 | 450,000 | 450,000 | 500,000 | 500,000 | 500,000 | 550,000 | 700,000 | 5,400,000 |
| 9 | Cash from turnover of estate assets | 300,000 | | | | | | | | | | | | | 300,000 |
| 10 | | | | | | | | | | | | | | | - |
| 11 | **Total Sources of Cash** | $ 400,000 | $ 250,000 | $ 250,000 | $ 300,000 | $ 400,000 | $ 450,000 | $ 450,000 | $ 450,000 | $ 500,000 | $ 500,000 | $ 500,000 | $ 550,000 | $ 700,000 | $ 5,700,000 |
| 12 | *Operating uses of cash (enter as +)* | | | | | | | | | | | | | | |
| 13 | Payroll | 92,000 | 92,000 | 92,000 | 92,000 | 92,000 | 92,000 | 92,000 | 92,000 | 92,000 | 92,000 | 92,000 | 92,000 | 92,000 | 1,196,000 |
| 14 | Inventory Purchases (COD) | 75,000 | 300,000 | 150,000 | 150,000 | 200,000 | 300,000 | 300,000 | 300,000 | 300,000 | 300,000 | 400,000 | 400,000 | 400,000 | 3,575,000 |
| 15 | Repairs & Maintenance | 750 | 750 | 750 | 750 | 750 | 750 | 750 | 750 | 750 | 750 | 750 | 750 | 750 | 9,750 |
| 16 | Supplies | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 6,500 |
| 17 | Fuel & Propane | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 19,500 |
| 18 | Travel | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 6,500 |
| 19 | Sales & Marketing | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| 20 | Commissions | - | 12,000 | - | - | - | - | 12,000 | - | - | - | 12,000 | - | - | 36,000 |
| 21 | Legal | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| 22 | Professional Services - Other | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| 23 | Bank charges | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 3,250 |
| 24 | Office Supplies | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 3,250 |
| 25 | Dues & Subscriptions | 150 | 150 | 150 | 150 | 150 | 150 | 150 | 150 | 150 | 150 | 150 | 150 | 150 | 1,950 |
| 26 | Overnight Mails Overnight & | 50 | 50 | 50 | 50 | 50 | 50 | 50 | 50 | 50 | 50 | 50 | 50 | 50 | 650 |
| 27 | IT - Software Services/Consulting | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| 28 | Shorts Cash (Over Petty Cash | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 2,600 |
| 29 | Rent | 32,000 | - | - | - | 116,000 | - | - | - | 116,000 | - | - | - | 181,000 | 445,000 |
| 30 | Office Equipment Leases | 600 | 600 | 600 | 600 | 600 | 600 | 600 | 600 | 600 | 600 | 600 | 600 | 600 | 7,800 |
| 31 | Janitoral Services/Supplies | 190 | 190 | 190 | 190 | 190 | 190 | 190 | 190 | 190 | 190 | 190 | 190 | 190 | 2,473 |
| 32 | Internet | - | 9,000 | - | - | - | 9,000 | - | - | - | 9,000 | - | - | - | 27,000 |
| 33 | Telephones, Cellphones | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| 34 | Utilities | - | 9,000 | - | - | - | 9,000 | - | - | - | 9,000 | - | - | - | 27,000 |
| 35 | Insurance | - | - | 29,000 | - | - | - | 29,000 | - | - | - | 29,000 | - | - | 87,000 |
| | Health Insurance | - | - | - | 75,000 | - | - | - | 75,000 | - | - | - | 75,000 | - | 225,000 |
| 37 | Interest | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| 38 | **Total Operating Cash Disbursements** | $ 203,940 | $ 426,940 | $ 275,940 | $ 321,940 | $ 412,940 | $ 414,940 | $ 437,940 | $ 471,940 | $ 512,940 | $ 414,940 | $ 537,940 | $ 571,940 | $ 677,940 | $ 5,682,223 |
| 39 | **Total Operating Cash Flow** | $ 196,060 | $ (176,940) | $ (25,940) | $ (21,940) | $ (12,940) | $ 35,060 | $ 12,060 | $ (21,940) | $ (12,940) | $ 85,060 | $ (37,940) | $ (21,940) | $ 22,060 | $ 17,777 |
| 40 | Total beginning operating cash | 89,000 | 285,060 | 108,120 | 82,179 | 60,239 | 47,299 | 82,359 | 94,418 | 72,478 | 59,538 | 144,598 | 106,657 | 84,717 | 89,000 |
| 41 | **Ending Cash** | $ 285,060 | $ 108,120 | $ 82,179 | $ 60,239 | $ 47,299 | $ 82,359 | $ 94,418 | $ 72,478 | $ 59,538 | $ 144,598 | $ 106,657 | $ 84,717 | $ 106,777 | $ 106,777 |
| 43 | Beginning Accounts Receivable Balance | 1,185,957 | 1,335,957 | 1,385,957 | 1,485,957 | 1,485,957 | 1,435,957 | 1,385,957 | 1,385,957 | 1,435,957 | 1,435,957 | 1,435,957 | 1,435,957 | 1,385,957 | 1,185,957 |
| 44 | Sales | 250,000 | 300,000 | 350,000 | 300,000 | 350,000 | 400,000 | 450,000 | 500,000 | 500,000 | 500,000 | 500,000 | 500,000 | 550,000 | 5,450,000 |
| 45 | Cash receipts | (100,000) | (250,000) | (250,000) | (300,000) | (400,000) | (450,000) | (450,000) | (450,000) | (500,000) | (500,000) | (500,000) | (550,000) | (700,000) | (5,400,000) |
| 46 | **Ending Accounts Receivable Balance** | $ 1,335,957 | $ 1,385,957 | $ 1,485,957 | $ 1,485,957 | $ 1,435,957 | $ 1,385,957 | $ 1,385,957 | $ 1,435,957 | $ 1,435,957 | $ 1,435,957 | $ 1,435,957 | $ 1,385,957 | $ 1,235,957 | 1,235,957 |
| | **Ending Cash and Receivables** | $ 1,621,017 | $ 1,494,077 | $ 1,568,136 | $ 1,546,196 | $ 1,483,256 | $ 1,468,316 | $ 1,480,375 | $ 1,508,435 | $ 1,495,495 | $ 1,580,555 | $ 1,542,614 | $ 1,470,674 | $ 1,342,734 | $ 1,342,734 |
| | **Cash and Receivables at Petition** | $ 1,247,010 | | | | | | | | | | | | | |

**EXHIBIT 1**

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:
11766 Wilshire Blvd, Suite 730, Los Angeles, CA 90025

A true and correct copy of the foregoing document entitled (*specify*): **DECLARATION OF DENNIS MICHAEL BARWICK IN SUPPORT OF FIRST DAY MOTIONS,** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1**. **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) January 7, 2026, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

- Proposed Attorneys for Debtor C.D.S. Moving Equipment, Inc.: **Derrick Talerico**: dtalerico@wztslaw.com; maraki@wztslaw.com; sfritz@wztslaw.com; admin@wztslaw.com
- Courtesy Notice/Interested Party: **Thomas E Shuck**: tshuck@pmcos.com; efilings@pmcos.com
- US Trustee's Office: ustpregion16.la.ecf@usdoj.gov; **Hatty K Yip**: hatty.yip@usdoj.gov; hatty.k.yip@usdoj.gov

☐ Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL**:
On (*date*)_____, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) _____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

Pursuant to the Judicial Practice Guide of the Honorable Julia W. Brand, chambers copies are waived unless requested.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| January 7, 2026 | Martha E. Araki | */s/ Martha E. Araki* |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

---

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012* **F 9013-3.1.PROOF.SERVICE**