Derrick Talerico – Bar # 223763
dtalerico@wztslaw.com
Paige T. Rolfe – Bar # 331096
prolfe@wztslaw.com
WEINTRAUB ZOLKIN TALERICO & SELTH LLP
11766 Wilshire Boulevard, Suite 730
Los Angeles, CA 90025
Telephone: (424) 500-8552

[Proposed] General Bankruptcy Counsel to
Chapter 11 Debtor and Debtor in Possession,
C.D.S. Moving Equipment, Inc.

# UNITED STATES BANKRUPTCY COURT
## CENTRAL DISTRICT OF CALIFORNIA – LOS ANGELES DIVISION

| | |
|---|---|
| In re:<br><br>C.D.S. MOVING EQUIPMENT, INC., dba CDS PACKAGING SOLUTIONS,<br><br>Debtor and Debtor In Possession. | Case No. 2:25-bk-21646-WB<br><br>Chapter 11<br><br>**EMERGENCY MOTION FOR ORDER AUTHORIZING (1) CONTINUED USE OF DEBTOR'S CREDIT CARD PROCESSING SYSTEM AND (2) USE OF PRE-PETITION BANK ACCOUNTS FOR 30 DAYS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Hearing:<br>Date:    January 14, 2026<br>Time:    2:00 p.m.<br>Courtroom: 1375<br>            255 E. Temple Street<br>            Los Angeles, CA 90012 |

C.D.S. MOVING EQUIPMENT, INC., dba CDS PACKAGING SOLUTIONS, the Chapter 11 debtor and debtor in possession ("***CDS***" or the "***Debtor***") in the above-captioned bankruptcy case (the "***Bankruptcy Case***"), hereby moves this Court for an order authorizing (1)

1  the continued use of Debtor's credit card processing system and (2) use of pre-petition bank
2  accounts for 30 days (the "***Motion***").

3      The Motion is brought pursuant to sections 105(a), 345, 363, 1107 and 1108 of Title 11 of
4  the United States Code (beginning at 11 U.S.C. §§ 101, et seq., the "***Bankruptcy Code***"), Rule
5  6004 of the Federal Rules of Bankruptcy Procedure (the "***Bankruptcy Rules***", and each
6  individually, a "***Bankruptcy Rule***"), and Rule 6004-1 of the Local Bankruptcy Rules of the Central
7  District of California (the "***Local Rules***", and each individually, a "***Local Rule***").

8      This Motion is based on the attached Memorandum of Points and Authorities, the *Omnibus*
9  *Declaration of Michael Dennis Barwick in Support of Debtor's First Day Motions* (Dkt. No. 27,
10 the "***First Barwick Declaration***"), and the concurrently filed Supplemental Omnibus Barwick
11 Declaration (the "***Second Barwick Declaration***"). Mr. Barwick is the Debtor's Chief Executive
12 Officer.

13     In order to prevent disruption to the Debtor's business operations, the Debtor requests that
14 the Court grant this Motion on an emergency basis. The Debtor requires immediate authority to
15 continue the use of its pre-petition cash management system in order to avoid interruption to its
16 business and fund expenses necessary to maintain its operation.

17     Additionally, to successfully implement the foregoing, the Debtor seeks a determination
18 that the notice requirements under Bankruptcy Rule 6004(a) are met or waived, and that the
19 fourteen-day stay under Bankruptcy Rule 6004(h) is waived, to the extent such Bankruptcy Rules
20 are applicable.

21
22 Dated: January 12, 2026         **WEINTRAUB ZOLKIN TALERICO & SELTH LLP**
23
24     By: */s/ Derrick Talerico*
        Derrick Talerico
25         [Proposed] General Bankruptcy Counsel for
        Chapter 11 Debtor and Debtor in Possession,
26         C.D.S. MOVING EQUIPMENT, INC.
27
28

**WEINTRAUB ZOLKIN TALERICO & SELTH LLP**
11766 WILSHIRE BLVD., SUITE 730
LOS ANGELES, CA 90025

## MEMORANDUM OF POINTS AND AUTHORITIES

**I.    INTRODUCTION**

Debtor brings this motion on an emergency basis to obtain Court authority to (i) continue using its credit card processing system, and (ii) to continue using its pre-petition Chase bank account for a period of 30 days from the date of entry of the order on this Motion. The Debtor requires authorization to use these facets of its pre-petition cash management system to avoid any disruption to customers' ability to make payments, which would cause harm to the estate and creditor body.

**II.    JURISDICTION**

This Court has jurisdiction to consider the Motion under 28 U.S.C. §§ 157 and 1334.  This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (M) and (O).  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

**III.    COMMENCEMENT OF BANKRUPTY CASE**

The Debtor's CEO, Dennis Barwick, commenced this Bankruptcy Case by filing an emergency petition for relief under Chapter 11 of the Bankruptcy Code on December 29, 2025 (the "***Petition Date***"). Following a hearing on an Order to Show Cause re Dismissal due to Debtor's failure to be represented by counsel, the Debtor retained Weintraub Zolkin Talerico & Selth LLP. The Debtor continues to carry out its business operations and manage its financial affairs as a Debtor-in-Possession pursuant to 11 U.S.C. §§ 1107 and 1108. No chapter 11 trustee, examiner, or committee has been appointed in the Bankruptcy Case.

**IV.    STATEMENT OF FACTS**

**A.    History of the Debtor and Its Business**

CDS is a California-based operating company that has served the moving, storage, logistics, and packaging industries for nearly fifty years. Over that time, CDS built a reputation as a reliable supplier of essential packaging materials, equipment, and logistics support to customers across multiple states. The company's longevity was achieved through consistent reinvestment, long-standing vendor relationships, and a workforce deeply experienced in its operations.

As of the Petition Date, CDS employs approximately sixty-five employees, many of whom have been with the company for years and whose livelihoods depend on the continuity of CDS's operations. CDS also maintains an established base of repeat customers and vendors who rely upon the company for timely delivery of mission-critical products. Prior to the events described below, CDS remained operationally viable, with active customer demand, functioning facilities, and a workforce prepared to continue servicing the business.

The disruption that ultimately forced CDS to seek relief under Chapter 11 was not caused by a collapse in demand, mismanagement, or an absence of operational capability. Rather, it arose from a sudden and sustained liquidity crisis fueled by the breakdown of Debtor's asset-based lending facility with Pathward, National Associates ("***Pathward***").

Despite holding first-priority liens on substantially all of the Debtor's assets and exercising daily dominion over CDS's cash through a lockbox and sweep structure, Pathward materially restricted and, at times, refused to advance funds necessary to meet ordinary-course operating expenses, claiming CDS was "out of formula," terminating Pathward's obligation to turn over any of the receivables it was collecting or adequately advancing on new receivables that were generated.

This imbalance—where Pathward swept substantially all cash proceeds while declining to fund operating needs—placed CDS in an untenable position. The company was forced to curtail operations and choose between strict compliance with lender controls and the basic requirements of sustaining operations, employees, and customer commitments. Over time, this funding refusal disrupted vendor confidence, constrained inventory availability, and impaired the Debtor's ability to fully meet market demand, despite the underlying business remaining sound. From the height of its outstanding debt of approximately $3.6 million in June/July 2025, at the time the bankruptcy was filed Pathway had reduced its debt to $2,400,962.73, but CDS was out of air.

CDS commenced this case to stabilize operations, preserve jobs, protect enterprise value. With access to working capital, CDS can restore normalized purchasing, rebuild inventory levels, reaffirm vendor relationships, and continue serving its customers while pursuing a restructuring or recapitalization that maximizes value for the estate.

The Debtor's CEO, Dennis Barwick, together with the Debtor's financial consultants, Integrated Consulting Services, LLC (retained at the direction of Pathward), prepared the 13-week Budget attached to the First Barwick Declaration as **Exhibit 1**. The Budget reflects the following: (1) end of the Compton lease and start of new Compton lease at new facility in April; (2) combining the Sacramento and Hayward locations; (3) deferral of January rent to end of lease for Las Vegas and Sacramento/Hayward; (4) collection of $300,000 from post-petition receivables held by Pathward; application of approximate $50,000 credit owed to Debtor from IT software firm against monthly fees; (5) steady growth of inventory and sales to meet backlog, current, and projected demand.

### B. The Debtor's Prepetition Credit Card Processing System and Bank Accounts

The Debtor's incoming credit card transactions are first sent through a payment gateway, which routes the transaction to a credit card processor, which deposits the payment (less merchant processing fees) to the Debtor's bank account (this process, and the companies which provide theses services to the Debtor, are referred to as the "***Credit Card Processing System***").

The Debtor uses the provider Cybersource as a payment gateway. Cybersource functions as a middleman to ensure that credit card payments are secure and routed to the correct destination. It validates and transmits card payment data from the Debtor's enterprise resource planning ("***ERP***") system, NetSuite, and then sends those transactions directly to Paymentech. Cybersource does not hold, retain, or sweep funds; its role is limited to secure transaction routing and system integration.

After payments are validated by Cybersource, they are routed to the credit card processor. The Debtor processes all of its credit card transactions through Paymentech, the merchant processing platform operated by Chase. Paymentech serves as the acquiring bank and processor for Visa, MasterCard, Discover, and American Express transactions. Standard merchant processing fees are deducted at settlement, and the net proceeds are deposited directly into the Debtor's operating checking account held at Chase (account number ____9052, the "***Chase Operating Account***"). Settlement typically occurs within 24–48 hours of the transaction date, although timing may vary slightly. The Debtor does not maintain any escrow, reserve, or lockbox accounts related to credit card processing beyond standard merchant fees deducted at settlement. All credit card

proceeds are deposited directly into the Debtor's Chase Operating Account in the ordinary course of business.

In addition to the Chase Operating Account, which is primarily used for incoming payments, the Debtor holds a second Chase bank account, which is primarily used for outgoing payments (account number ____9235, the "***Chase AP Account***," together with the Chase Operating Account, the "***Chase Accounts***").

## V.  LEGAL AUTHORITY

### A.  The Debtor Should be Authorized to Continue Use of its Pre-Petition Cash Management System Pursuant to 11 U.S.C. § 363 to Operate, Maintain, and Preserve Assets of the Estate

The Debtor's use of property of the estate is governed by Section 363 of the Bankruptcy Code. Section 363(c)(1) provides in pertinent part:

> If the business of the debtor is authorized to be operated under section … 1108… of this title and unless the court orders otherwise, the trustee may enter into transactions, including the sale or lease of property of the estate, in the ordinary course of business, without notice or a hearing, and may use property of the estate in the ordinary course of business without notice or a hearing.

11 U.S.C. § 363(c)(1). A debtor in possession has all of the rights and powers of a trustee with respect to property of the estate, including the right to use property of the estate in compliance with Section 363. *See* 11 U.S.C. § 1107(a).

The purpose of section 363(c)(l) is to provide a debtor in possession with the flexibility to engage in ordinary course transactions required to operate its business without unnecessary oversight by creditors or the court. See, e.g. *In re Roth Am., Inc.*, 975 F.2d 949, 952 (3d Cir. 1992) ("Section 363 is designed to strike [a] balance, allowing a business to continue its daily operations without excessive court or creditor oversight and protecting secured creditors and others from dissipation of the estate's assets.") (internal quotation omitted); *In re Nellson Nutraceutical Inc.,* 369 B.R. 787, 796 (Bankr. D. Del. 2007).

"A debtor in possession under Chapter 11 is generally authorized to continue operating its business." *Amdura Nat'l Distrib Co. v. Amdura Corp. (In re Amdura Corp.),* 75 F.3d 1447, 1453

(10th Cir. 1996) (questioned on other grounds); see also 11 U.S.C. §§ 1107 & 1108.  In addition, "routine transactions" between bank accounts under a debtor's cash management system are covered under § 363(c).  *Amdura Nat'l Distrib Co.*, 75 F.3d at 1453.

To the extent that the Debtor's continued use of its pre-petition cash management system falls outside of the ordinary course of business, the Court may approve such continued use as within the reasonable business judgment of the Debtor.  Courts afford broad deference to the reasonable business judgment of a debtor in possession.  *See Bennett v. Williams*, 892 F.2d. 822, 824 (9th Cir. 1989).

Finally, Section 105(a) empowers the Court to "issue any order, process, or judgment that is necessary to carry out the provisions of this title."  It is within the Court's equitable power under § 105(a) to approve the continued use of the Debtor's cash management systems.

Generally, bankruptcy courts treat a request for authority to continue utilizing bank accounts as a relatively "simple matter."  *In re Baldwin-United Corp.*, 79 B.R. 321, 327 (Bankr. S.D. Ohio 1987); *see* also *In re Charter Co.*, 778 F.2d 617, 621 (11th Cir. 1985) (affirming district court decision denying creditor's motion for leave to appeal bankruptcy court's cash management order, holding that authorizing the debtors to utilize their pre-petition bank accounts and "routine cash management system" was "entirely consistent" with applicable provisions of the Bankruptcy Code); *In re Voyager Express, Inc.,* 2009 Bankr. LEXIS 4598 (Bankr. D. Colo. 2009) (authorizing debtor to continue to use existing bank account in connection with a debtor in possession financing motion).

### 1.  The Debtor should be authorized to continue using its pre-petition Credit Card Processing System

To the extent that the Debtor's accounts with Cybersource and Paymentech are considered pre-petition accounts which are property of the bankruptcy estate, the Debtor requests authority to continue use of its Credit Card Processing System. The Debtor's ability to operate depends heavily on the ability to receive credit card payments from its customers, and use of the existing Credit Card Processing System is within the ordinary course of its business. If the Credit Card Processing System is determined not to be in the ordinary course of the Debtor's business, it is within the

Debtor's business judgment that continuing its use will provide stability to the Debtor's business by avoiding a disruption in credit card payments being processed, which is to the benefit of the bankruptcy estate and its creditors.

### 2. **The Debtor should be authorized to continue using its pre-petition Chase Accounts for 30 days to avoid payment interruption**

As set forth above, the Debtor maintains two pre-petition bank accounts at Chase, the Chase Operating Account and the Chase AP Account. The Debtor is in the process of opening new Debtor-in-Possession accounts at Chase Bank (the "***DIP Accounts***") and anticipates that those accounts will be open in the following week. The Debtor requests authority to continue using its pre-petition Chase Accounts for a period of 30 days from the date of entry of an order on this Motion, to allow time to fully transition to the new DIP Accounts. The uninterrupted processing of incoming payments is critical to the Debtor's continued operations, and the Debtor's temporary continued use of the Chase Accounts is within the ordinary course of its business.

### 3. **The 14-day stay of Bankruptcy Rule 6004(h) should be waived**

The Debtor requests that the Court enter an order providing that notice of the relief requested herein satisfies Bankruptcy Rule 6004(a) and that the Debtor has established cause to waive the 14-day stay of Bankruptcy Rule 6004(h). For the reasons stated herein, the Debtor's continued use of its pre-petition cash management system is in the ordinary course of business pursuant to Section 363(c)(1) of the Bankruptcy Code and therefore does not require notice or a hearing. However, if it is determined that the relief requested is outside the ordinary course of the Debtor's business, then the requirements of Rule 6004(a)(1) are met because relief on an emergency basis is justified by the Debtor's need to avoid business interruption.

## VI. CONCLUSION

For the foregoing reasons, the Debtor respectfully requests the entry of an order (i) authorizing the Debtor to use its pre-petition credit card processing system indefinitely, (ii) authorizing the Debtor to use its pre-petition bank account at Chase for a period of 30 days

after such order is granted, and (iii) waiving the 14-day stay of Rule 6004(h), if it is determined to be applicable.

Dated:  January 12, 2026                    **WEINTRAUB ZOLKIN TALERICO & SELTH LLP**

By  /s/ *Derrick Talerico*
    Derrick Talerico
    [Proposed] General Bankruptcy Counsel for
    Chapter 11 Debtor and Debtor in Possession,
    C.D.S. MOVING EQUIPMENT, INC.

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:
11766 Wilshire Blvd, Suite 730, Los Angeles, CA 90025

A true and correct copy of the foregoing document entitled (*specify*): **EMERGENCY MOTION FOR ORDER AUTHORIZING (1) CONTINUED USE OF DEBTORS CREDIT CARD PROCESSING SYSTEM; AND (2) USE OF PRE-PETITION BANK ACCOUNTS FOR 30 DAYS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF,** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1**. **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) January 12, 2026, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

- Proposed Attorneys for Debtor C.D.S. Moving Equipment, Inc.: **Derrick Talerico**: dtalerico@wztslaw.com; maraki@wztslaw.com; sfritz@wztslaw.com; admin@wztslaw.com
- Attorneys for Creditor American Express National Bank, c/o Zwicker & Associates, P.C.: **Jonathan Arias**: bknotices@zwickerpc.com
- Attorneys for Creditor COMREF SO. CA. INDUSTRIAL SUB G, LLC: **Ronald K Brown**: ron@rkbrownlaw.com
- Attorneys for Creditor Pathward, National Association: **Thomas E Shuck**: tshuck@pmcos.com; efilings@pmcos.com
- Attorneys for Creditor JP Morgan Chase Bank, N.A.: **Rebecca M Wicks**: rwicks@buchalter.com; lverstegen@buchalter.com; docket@buchalter.com
- US Trustee's Office: ustpregion16.la.ecf@usdoj.gov; **Hatty K Yip**: hatty.yip@usdoj.gov; hatty.k.yip@usdoj.gov

☐ Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL**:
On (*date*)_____, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*)_____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

Pursuant to the Judicial Practice Guide of the Honorable Julia W. Brand, chambers copies are waived unless requested.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| January 12, 2026 | Martha E. Araki | */s/ Martha E. Araki* |
|---|---|---|
| Date | Printed Name | Signature |

---

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*    **F 9013-3.1.PROOF.SERVICE**