Derrick Talerico – Bar # 223763
dtalerico@wztslaw.com
Paige T. Rolfe – Bar # 331096
prolfe@wztslaw.com
WEINTRAUB ZOLKIN TALERICO & SELTH LLP
11766 Wilshire Boulevard, Suite 730
Los Angeles, CA 90025
Telephone: (424) 500-8552

[Proposed] General Bankruptcy Counsel to
Chapter 11 Debtor and Debtor in Possession,
C.D.S. Moving Equipment, Inc.

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA – LOS ANGELES DIVISION

| | |
|---|---|
| In re:<br><br>C.D.S. MOVING EQUIPMENT, INC., dba CDS PACKAGING SOLUTIONS,<br><br>Debtor and Debtor In Possession. | Case No. 2:25-bk-21646-WB<br><br>Chapter 11<br><br>**DEBTOR'S MOTION FOR ENTRY OF ORDER AUTHORIZING DEBTOR TO HONOR PRE-PETITION EMPLOYEE ACCRUED VACATION AND SICK LEAVE; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Hearing:<br>Date:        January 14, 2026<br>Time:       2:00 p.m.<br>Courtroom: 1375<br>                     255 E. Temple Street<br>                     Los Angeles, CA 90012 |

C.D.S. MOVING EQUIPMENT, INC., dba CDS PACKAGING SOLUTIONS, the Chapter 11 debtor and debtor in possession ("***CDS***" or the "***Debtor***") in the above-captioned bankruptcy case (the "***Bankruptcy Case***"), hereby submits this motion (the "***Employee Motion***") for the entry of an order pursuant to Sections 507(a)(4) and (5) of chapter 11 of title 11 of the United States Code (the "***Bankruptcy Code***"), and Local Bankruptcy Rules 2081-1(a)(6) and 9075-1(a): authorizing the

1  Debtor's payment and/or honoring of pre-petition employee accrued vacation and sick leave. The
2  Debtor currently employs sixty-five (65) employees (the "***Employees***"), all of whom provide services
3  that are essential to the Debtor's continued operations.

4  This Motion is based on the attached Memorandum of Points and Authorities, the *Omnibus*
5  *Declaration of Michael Dennis Barwick in Support of Debtor's First Day Motions* (Dkt. No. 27,
6  the "***First Barwick Declaration***"), and the concurrently filed Supplemental Omnibus Declaration
7  of Michael Dennis Barwick (the "***Second Barwick Declaration***"). Mr. Barwick is the Debtor's
8  Chief Executive Officer.

9  As a result of the Debtor's commencement of this Bankruptcy Case, absent a Court order
10 approving the Employee motion, the Debtor will be restricted from honoring employee vacation
11 time and sick leave which were accrued and unpaid as of the petition date (the "***Employee***
12 ***Obligations***"). As the Debtor's Employees are vital to the orderly administration of the Debtor's
13 estate, honoring the Employee Obligations is necessary to maintain Employees' morale through
14 the administration of the Debtor's case and to prevent many of the Employees from suffering
15 extreme personal hardship or from leaving the Debtor during the pendency of the Bankruptcy
16 Case. Moreover, the Debtor's honoring prepetition Employee Obligations is in the ordinary course
17 of business will not prejudice general unsecured creditors or materially affect the Debtor's estate,
18 as these claims are entitled to priority under sections 507(a)(4) of the Bankruptcy Code and must
19 be paid ahead of general unsecured claims.

20 The Debtor respectfully requests that the Court enter an order granting the Motion in its
21 entirety.

23 Dated: January 12, 2026              **WEINTRAUB ZOLKIN TALERICO & SELTH LLP**

25                                      By: /s/ Derrick Talerico
                                            Derrick Talerico
26                                          [Proposed] General Bankruptcy Counsel for
                                            Chapter 11 Debtor and Debtor in Possession,
27                                          C.D.S. MOVING EQUIPMENT, INC.

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

Debtor brings this motion on an emergency basis seeking an order of the Court authorizing the Debtor honor pre-petition employee accrued vacation and sick leave (the "***Employee Obligations***"). The Debtor's failure to honor the Employee Obligations will likely lead to a drop in employee morale, loyalty, and work ethic, and may cause Employees to leave the company, interfering with the Debtor's ability to operate and causing harm to the estate and creditor body.

## II.   JURISDICTION

This Court has jurisdiction to consider the Motion under 28 U.S.C. §§ 157 and 1334.  This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (M) and (O).  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## III.   COMMENCEMENT OF BANKRUPTY CASE

The Debtor's CEO, Dennis Barwick, commenced this Bankruptcy Case by filing an emergency petition for relief under Chapter 11 of the Bankruptcy Code on December 29, 2025 (the "***Petition Date***"). Following a hearing on an Order to Show Cause re Dismissal due to Debtor's failure to be represented by counsel, the Debtor retained Weintraub Zolkin Talerico & Selth LLP. The Debtor continues to carry out its business operations and manage its financial affairs as a Debtor-in-Possession pursuant to 11 U.S.C. §§ 1107 and 1108. No chapter 11 trustee, examiner, or committee has been appointed in the Bankruptcy Case.

## IV.   STATEMENT OF FACTS

### A.   History of the Debtor and Its Business

CDS is a California-based operating company that has served the moving, storage, logistics, and packaging industries for nearly fifty years. Over that time, CDS built a reputation as a reliable supplier of essential packaging materials, equipment, and logistics support to customers across multiple states. The company's longevity was achieved through consistent reinvestment, long-standing vendor relationships, and a workforce deeply experienced in its operations.

As of the Petition Date, CDS employs approximately sixty-five employees, many of whom have been with the company for years and whose livelihoods depend on the continuity of CDS's

operations. CDS also maintains an established base of repeat customers and vendors who rely upon the company for timely delivery of mission-critical products. Prior to the events described below, CDS remained operationally viable, with active customer demand, functioning facilities, and a workforce prepared to continue servicing the business.

The disruption that ultimately forced CDS to seek relief under Chapter 11 was not caused by a collapse in demand, mismanagement, or an absence of operational capability. Rather, it arose from a sudden and sustained liquidity crisis fueled by the breakdown of Debtor's asset-based lending facility with Pathward, National Association ("***Pathward***").

Despite holding first-priority liens on substantially all of the Debtor's assets and exercising daily dominion over CDS's cash through a lockbox and sweep structure, Pathward materially restricted and, at times, refused to advance funds necessary to meet ordinary-course operating expenses, claiming CDS was "out of formula," terminating Pathward's obligation to turn over any of the receivables it was collecting or adequately advancing on new receivables that were generated.

This imbalance—where Pathward swept substantially all cash proceeds while declining to fund operating needs—placed CDS in an untenable position. The company was forced to curtail operations and choose between strict compliance with lender controls and the basic requirements of sustaining operations, employees, and customer commitments. Over time, this funding refusal disrupted vendor confidence, constrained inventory availability, and impaired the Debtor's ability to fully meet market demand, despite the underlying business remaining sound. From the height of its outstanding debt of approximately $3.6 million in June/July 2025, at the time the bankruptcy was filed Pathway had reduced its debt to $2,400,962.73, but CDS was out of air.

CDS commenced this case to stabilize operations, preserve jobs, protect enterprise value. With access to working capital, CDS can restore normalized purchasing, rebuild inventory levels, reaffirm vendor relationships, and continue serving its customers while pursuing a restructuring or recapitalization that maximizes value for the estate.

The Debtor's CEO, Dennis Barwick, together with the Debtor's financial consultants, Integrated Consulting Services, LLC (retained at the direction of Pathward), prepared the 13-week

Budget attached to the First Barwick Declaration as **Exhibit 1**. The Budget reflects the following: (1) end of the Compton lease and start of new Compton lease at new facility in April; (2) combining the Sacramento and Hayward locations; (3) deferral of January rent to end of lease for Las Vegas and Sacramento/Hayward; (4) collection of $300,000 from post-petition receivables held by Pathward; application of approximate $50,000 credit owed to Debtor from IT software firm against monthly fees; (5) steady growth of inventory and sales to meet backlog, current, and projected demand.

### B. The Debtor's Employees and their Benefits

The Debtor has approximately sixty-five (65) employees (the "*Employees*," or individually, an "*Employee*") between its five locations. No Employee referred to herein is an insider of the Debtor as defined by Bankruptcy Code Section 101(31).

The Debtor offers Employees various benefits consistent with industry standards including medical, dental, and vision insurance, paid vacation time, paid sick leave, and a 401(k) retirement savings plan which is administered through a third-party provider. The Debtor offers Employees vacation time which accrues based on time worked. Each Employee's vacation time caps at four weeks and does not roll over year by year; Employees must "use it or lose it." The maximum amount of vacation time and sick leave that a single Employee had accrued but not used as of the Petition Date is approximately $6,000, and for most employees is far less.

By this Motion, the Debtor requests that it be authorized to honor Employees' vacation time and sick leave which were accrued, but not yet paid, as of the petition date.

### V. LEGAL ARGUMENT

#### A. The Relief Requested is Authorized by Sections 105(a), 507(a)(4), 507(a)(5), and 363(b)(1) of the Bankruptcy Code

Section 105(a) of the Bankruptcy Code empowers the bankruptcy court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provision of this title." 11 U.S.C. § 105(a). As a general rule, however, the bankruptcy court may not use its section 105(a) powers to authorize an action that would be inconsistent with or prohibited by another provision of the Bankruptcy Code. *See Norwest Bank Worthington v. Ahlers*, 485 U.S. 197, 206 (1988). In

other words, section 105(a) must be used in conjunction with another provision of the Bankruptcy Code. In this instance, the coupling provision is Bankruptcy Code section 507(a)(4)(A), which grants priority status to employee claims for wages, salaries, or commissions, including vacation, severance, and sick pay, earned within one hundred and eighty (180) days before the Petition Date, up to the amount of $17,150 per Employee.[1]

Where business exigencies require, courts have exercised their equitable powers under Bankruptcy Code section 105(a) to authorize debtors to pay prepetition employee wage and benefit claims that would be entitled to priority pursuant to Bankruptcy Code sections 507(a)(4) and (5). *See, e.g., In re CEI Roofing, Inc.*, 315 B.R. 50, 60 (Bankr. N.D. Tex. 2004) ("Thus, there has evolved a rule for the payment of prepetition wages and benefits which is based on both common sense and the express provisions of the Bankruptcy Code. If employees are not paid, they will leave. If they leave the Debtor's business, the bankruptcy case fails shortly after the filing. No one will benefit from the process."); *In re Gulf Air, Inc.*, 112 B.R. 152, 153 (Bankr. W.D. La. 1989) (endorsing the debtor's payment of prepetition employee wage claims because "retention of skills, organization and reputation for performance must be considered valuable assets contributing to going concern value and aiding rehabilitation where that is possible."). In this district, courts have routinely granted such relief. *See, e.g., In re Gordian Medical, Inc.*, 8:12-12399-MW (Bankr. C.D. Cal 2012), Mar. 5, 2012 [Docket No. 57]; *In re Ocean Park Hotels – Toy, LLC*, 1:10-bk-15358-GM (Bankr. C.D. Cal, 2010), May 11, 2010, *Order Authorizing the Debtor to Honor and Pay Prepetition Workforce Obligations etc.*

---

[1] Bankruptcy Code section 507(a)(4)(A) provides that

> [t]he following expenses and claims have priority in the following order . . . . Fourth, allowed unsecured claims, but only to the extent of $10,000 [adjusted to $17,150 as of April 1, 2025] for each individual or corporation, as the case may be, earned within 180 days before the date of the filing of the petition or the date of the cessation of the debtor's business, whichever occurs first, for— (A) wages, salaries, or commissions, including vacation, severance, and sick leave pay earned by an individual . . . .

Bankruptcy Code section 363(b)(1), which authorizes a debtor in possession to use property of the estate other than in the ordinary course of business after notice and a hearing, may also be another appropriate coupling provision.

As Bankruptcy Code section 507(a) grants priority payment to certain employee wage and benefit claims, the payment of those claims prior to confirmation of a plan of reorganization merely represents an acceleration of the payment of those claims, which does not offend the distribution scheme of the Bankruptcy Code. This is sometimes called the "Necessity of Payment" doctrine. As the court explained in *In re Equalnet Communications Corp.*, 258 B.R. 368 (Bankr. S.D. Tex. 2000):

> [C]ertain types of claim enjoy a priority status in addition to sometimes being critical to the ongoing nature of the business. For example, employee wage claims and certain tax claims are both priority claims in whole or in part. The need to pay those claims in the ordinary course of business time frame is simple common sense. Employees are more likely to stay in place and refrain from actions that are detrimental to the case and/or the estate if their pay and benefits remain intact and uninterrupted.

*Id.* at 370.

The Debtor believes that the Employee Obligations constitute priority claims under section 507(a)(4) of the Bankruptcy Code.[2] As priority claims, they must be paid in full before any general unsecured obligations of the Debtor may be satisfied. Accordingly, the relief requested with regard to those claims may affect only the timing of the payment of these priority obligations and will not prejudice the rights of general unsecured creditors or other parties in interest. The cost to the Debtor to honor accrued vacation and sick leave is far less per employee than the statutory priority allowance. Even the slightest delay in providing this relief to its Employees will hamper operations and damage the Debtor's estate. Under these circumstances, the "necessity of payment" doctrine authorizes the requested relief.

///

///

---

[2] The Debtor does not at this time seek to assume any executory contracts or obligations, and the Employee Motion should not be deemed to be an assumption or adoption of any employee benefits or policies. Rather, the Debtor merely seeks to take steps that it believes are necessary to retain its existing workforce and to maximize the value of the bankruptcy estate. Also, the Debtor will retain the discretion not honor the obligations contemplated by the Employee Motion for particular Employees, and nothing in the Employee Motion shall, in and of itself, confer upon any Employee or other parties an entitlement to administrative priority or other preferences in distribution from the Debtor's estate.

### B. <u>Allowing the Debtor to Honor its Obligations to Employees will Maximize Value to the Estate and is Essential to Ensure Stability Through Reorganization</u>

Allowing the Debtor to honor obligations to its Employees for vacation time and sick leave which were earned pre-petition and not yet taken is vital to the continuing success of the Debtor's operations, and by extension, the continuing success of this Bankruptcy Case. If the Debtor is unable to honor its Employee Obligations, it is likely that—at the very least—the failure to honor those commitments would lead to a drastic drop in employee morale, loyalty, and work ethic. If Employees were to leave as a result of that disruption, it could be difficult to hire replacements based upon the unfavorable publicity of the Debtor's failure to honor Employee Obligations, and even if replacements were hired it would take significant time before they were able to be fully trained. Avoiding disruption to the Debtor's Employee Obligations is key to employee retention, and retaining the Debtor's workforce is key to maintaining stability as the Debtor works through the reorganization process.

### C. <u>The Relief Requested Satisfies Local Bankruptcy Rule 2081-1(a)(6)</u>

Local Rule 2081-1(a)(6) states the requirements of a motion to honor prepetition employment procedures, which are satisfied here as follows: (a) the Employees that are the subject of the Employee Motion are still employed by the Debtor; (b) the payment of the claims that are the subject of this Employee Motion are necessary in that they will preserve morale, ensuring the Debtor can maintain its business operations without disruption; (c) of the amounts sought to be paid to Employees, none are to insiders; and (d) payment of the Employee Obligations will not render the Debtor's estate administratively insolvent.

### D. <u>Need for an Order Granting Relief to be Immediately Effective</u>

Bankruptcy Rule 6003 provides that "[e]xcept to the extent that relief is necessary to avoid immediate and irreparable harm, the court shall not, within 21 days after the filing of the petition, grant . . . (b) a motion to use, sell, lease, or otherwise incur an obligation regarding property of the estate, including a motion to pay all or part of a claim that arose before the filing of the petition . . ." For the reasons discussed herein it would cause immediate and irreparable harm to the Debtor and its business operations if the Debtor is not authorized to continue its ordinary business

operations by honoring the Employee Obligations. Accordingly, the relief requested herein is consistent with Bankruptcy Rule 6003.

Further, to implement the foregoing successfully, the Debtor seeks a waiver of the notice requirements under Bankruptcy Rule 6004(a) and the fourteen-day stay of an order authorizing the use, sale, or lease of property under Bankruptcy Rule 6004(h), to the extent these rules are applicable.

## VI.  CONCLUSION

For the foregoing reasons, the Debtor respectfully requests entry of an order authorizing, but not directing, the Debtor to honor its Employee Obligations in accordance with the Debtor's ordinary course of business and stated policies.

Dated: January 12, 2026        **WEINTRAUB ZOLKIN TALERICO & SELTH LLP**

By */s/ Derrick Talerico*
   Derrick Talerico
   [Proposed] General Bankruptcy Counsel for
   Chapter 11 Debtor and Debtor in Possession,
   C.D.S. MOVING EQUIPMENT, INC.

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:
    11766 Wilshire Blvd, Suite 730, Los Angeles, CA 90025

A true and correct copy of the foregoing document entitled (*specify*): **EMERGENCY MOTION FOR ENTRY OF ORDER AUTHORIZING PAYMENT AND/OR HONORING OF PRE-PETITION EMPLOYEE ACCRUED VACATION AND SICK LEAVE; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF,** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) January 12, 2026, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

- Proposed Attorneys for Debtor C.D.S. Moving Equipment, Inc.: **Derrick Talerico**: dtalerico@wztslaw.com; maraki@wztslaw.com; sfritz@wztslaw.com; admin@wztslaw.com
- Attorneys for Creditor American Express National Bank, c/o Zwicker & Associates, P.C.: **Jonathan Arias**: bknotices@zwickerpc.com
- Attorneys for Creditor COMREF SO. CA. INDUSTRIAL SUB G, LLC: **Ronald K Brown**: ron@rkbrownlaw.com
- Attorneys for Creditor Pathward, National Association: **Thomas E Shuck**: tshuck@pmcos.com; efilings@pmcos.com
- Attorneys for Creditor JP Morgan Chase Bank, N.A.: **Rebecca M Wicks**: rwicks@buchalter.com; lverstegen@buchalter.com; docket@buchalter.com
- US Trustee's Office: ustpregion16.la.ecf@usdoj.gov; **Hatty K Yip**: hatty.yip@usdoj.gov; hatty.k.yip@usdoj.gov

☐ Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL**:
On (*date*)_____, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) _____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

Pursuant to the Judicial Practice Guide of the Honorable Julia W. Brand, chambers copies are waived unless requested.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| January 12, 2026 | Martha E. Araki | */s/ Martha E. Araki* |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                                                                        **F 9013-3.1.PROOF.SERVICE**