Derrick Talerico – Bar # 223763
dtalerico@wztslaw.com
Paige T. Rolfe – Bar # 331096
prolfe@wztslaw.com
WEINTRAUB ZOLKIN TALERICO & SELTH LLP
11766 Wilshire Boulevard, Suite 730
Los Angeles, CA 90025
Telephone: (424) 500-8552

[Proposed] General Bankruptcy Counsel to
Chapter 11 Debtor and Debtor in Possession,
C.D.S. Moving Equipment, Inc.

# UNITED STATES BANKRUPTCY COURT

# CENTRAL DISTRICT OF CALIFORNIA – LOS ANGELES DIVISION

| | |
|---|---|
| In re:<br><br>C.D.S. MOVING EQUIPMENT, INC., dba CDS PACKAGING SOLUTIONS,<br><br>        Debtor and Debtor In Possession. | Case No. 2:25-bk-21646-WB<br><br>Chapter 11<br><br>**SUPPLEMENTAL OMNIBUS DECLARATION OF MICHAEL DENNIS BARWICK IN SUPPORT OF DEBTOR'S FIRST DAY MOTIONS**<br><br>Hearing:<br>Date:        January 14, 2026<br>Time:        2:00 p.m.<br>Courtroom:  1375<br>                 255 E. Temple Street<br>                 Los Angeles, CA 90012<br><br>Hon. Julia W. Brand |

I, MICHAEL DENNIS BARWICK, hereby declare:

1.      I am an individual over the age of eighteen and the President and Chief Executive Officer of C.D.S. MOVING EQUIPMENT, INC., dba CDS PACKAGING SOLUTIONS, the Chapter 11 debtor and debtor in possession ("***CDS***" or the "***Debtor***") herein. I am the Chief

WEINTRAUB ZOLKIN TALERICO & SELTH LLP
11766 WILSHIRE BLVD., SUITE 730
LOS ANGELES, CA 90025

Executive Officer of CDS. Each of the facts contained in this declaration is based upon my personal knowledge and, if called as a witness, I could and would competently testify thereto.

2.     The Debtor commenced this Bankruptcy Case by filing a petition for relief under Chapter 11 of the Bankruptcy Code on December 29, 2025 (the "***Petition Date***").  The Debtor continues to carry out its business operations and manager its financial affairs as a Debtor in Possession pursuant to 11 U.S.C. §§ 1107 and 1108.  No trustee, examiner or committee has been appointed in the Bankruptcy Case.

**Emergency Motions**

3.     I make this declaration to supplement my previous *Omnibus Declaration of Michael Dennis Barwick in Support of Debtor's First Day Motions*, which was filed on January 7, 2026 as Dkt. No. 27 (the "***First Barwick Declaration***"). The statements I made in the First Barwick Declaration are incorporated here as if set forth fully herein. The First Barwick Declaration was made in support of the Debtor's emergency motions filed January 7, 2026:

    a.   *Emergency Motion for Order (i) Authorizing Debtor's Use of Cash Collateral Pursuant to 11 U.S.C. § 363 and Fed. R. Bank. Proc. 4001; and Directing Turnover of Estate Property Pursuant to 11 U.S.C. § 542* (the "***Cash Collateral Motion***"); and

    b.   *Emergency Motion for Order Limiting Notice and Related Relief* (the "***Limit Notice Motion***").

4.     I make this Declaration in support of the following emergency motions being filed herewith:

    a.   *Emergency Motion for Order Authorizing (1) Continued Use of Debtor's Credit Card Processing System and (2) Use of Pre-Petition Bank Accounts for 30 Days* (the "***Cash Management Motion***"); and

    b.   *Emergency Motion for Entry of Interim and Final Orders (1) Approving the Debtor's Proposed Adequate Assuranceo f Payment for Future Utility Services, (2) Prohibiting Utility Companies from Altering, Refusing, or Discontinuing Services, (3) Approving the Debtor's Proposed Procedures for Resolving*

WEINTRAUB ZOLKIN TALERICO & SELTH LLP
11766 WILSHIRE BLVD., SUITE 730
LOS ANGELES, CA 90025

1   *Adequate Assurance Requests; and (4) Granting Related Relief* (the "***Utilities***

2   ***Motion***"); and

3       c.   *Debtor's Motion for Entry of Order Authorizing Debtor to Honor Pre-Petition*

4           *Employee Accrued Vacation and Sick Leave* (the "***Employee Motion***");

5   collectively, along with the Cash Collateral Motion and the Limit Notice Motion, the "***First Day***

6   ***Motions***").  Unless otherwise defined, all capitalized terms herein shall have the same meanings as

7   in the applicable First Day Motions.

8                                  **Amended Budget**

9       5.     Upon further consideration of the budget attached to the First Barwick

10  Declaration in the context of the Utilities Motion, I determined that the line items for Internet,

11  Telephone, and Utilities required amendment. The attached 13 week budget (the "***Budget***")

12  amends the original budget as follows: (1) telephone and internet line items are combined;

13  (2) the monthly expense of internet/telephone is estimated at $8,700 (internet was previously at

14  $9,000); and (3) utilities is increased from $9,000 to $11,680.

15                                **Cash Management Motion**

16      6.     The Debtor's incoming credit card transactions are first sent through a payment

17  gateway, which routes the transaction to a credit card processor, which deposits the payment

18  (less merchant processing fees) to the Debtor's bank account (this process, and the companies

19  which provide theses services to the Debtor, are referred to as the "***Credit Card Processing***

20  ***System***").

21      7.     The Debtor uses the provider Cybersource as a payment gateway. Cybersource

22  functions as a middleman to ensure that credit card payments are secure and routed to the correct

23  destination.

24      8.     Cybersource validates and transmits card payment data from the Debtor's

25  enterprise resource planning ("***ERP***") system, NetSuite, and then sends those transactions

26  directly to Paymentech. Cybersource does not hold, retain, or sweep funds; its role is limited to

27  secure transaction routing and system integration.

28

9.    After payments are validated by Cybersource, they are routed to the credit card processor. The Debtor processes all of its credit card transactions through Paymentech, the merchant processing platform operated by Chase. Paymentech serves as the acquiring bank and processor for Visa, MasterCard, Discover, and American Express transactions.

10.    Standard merchant processing fees are deducted at settlement, and the net proceeds are deposited directly into the Debtor's operating checking account held at Chase (account number xxxx9052, the "***Chase Operating Account***"). Settlement typically occurs within 24–48 hours of the transaction date, although timing may vary slightly.

11.    The Debtor does not maintain any escrow, reserve, or lockbox accounts related to credit card processing beyond standard merchant fees deducted at settlement. All credit card proceeds are deposited directly into the Debtor's Chase Operating Account in the ordinary course of business.

12.    In addition to the Chase Operating Account, which is primarily used for incoming payments, the Debtor holds a second Chase bank account, which is primarily used for outgoing payments (account number xxxx9235, the "***Chase AP Account***," together with the Chase Operating Account, the "***Chase Accounts***").

13.    The Debtor's ability to operate depends heavily on the ability to receive credit card payments from its customers, and use of the existing Credit Card Processing System is within the ordinary course of its business.

14.    If the Credit Card Processing System is determined not to be in the ordinary course of the Debtor's business, it is within my business judgment that continuing its use will provide stability to the Debtor's business by avoiding a disruption in credit card payments being processed, which is to the benefit of the bankruptcy estate and its creditors.

15.    The Debtor is in the process of opening new Debtor-in-Possession accounts at Chase bank (the "***DIP Accounts***"). I anticipate that those accounts will be open in the following week.

16.    I believe that allowing the Debtor to use is pre-petition Chase Accounts for an additional 30 days is necessary to allow time to fully transition to the new DIP Accounts.

WEINTRAUB ZOLKIN TALERICO & SELTH LLP
11766 WILSHIRE BLVD., SUITE 730
LOS ANGELES, CA 90025

17.  The uninterrupted processing of incoming payments is critical to the Debtor's continued operations, and the Debtor's temporary continued use of the Chase Accounts is within the ordinary course of its business

**Utilities Motion**

18.  Uninterrupted Utility Services are vital to the Debtor's business.

19.  The Debtor's intention is to close the Heyward Location and Sacramento Location within the next few months, replacing them with a new location which will take over their combined operations with lower overhead expenses. These two locations are included in the Utilities Motion to ensure that there is no interruption of service before operations are moved.

20.  Attached hereto as **Exhibit 2** is a spreadsheet of the Debtor's Utility Providers for each location. I have made an extensive and good faith effort to identify all of the Utility Providers that provide it Utility Services and to include them on the Utility Provider List.

21.  Historically, between all locations, the Debtor incurs approximately $11,680 for Utility Services, as detailed on the Utility Provider List. The Budget accounts for $11,680 of fees on account of Utility Services per month.

**Employee Motion**

22.  The Debtor has approximately sixty-five (65) employees (the "***Employees***," or individually, an "***Employee***") between its five locations.

23.  No Employee referred to in the Employee Motion is an insider of the Debtor as defined by Bankruptcy Code Section 101(31).

24.  Employees are offered various benefits consistent with industry standards including medical, dental, and vision insurance, paid vacation time, paid sick leave, and a 401(k) retirement savings plan which is administered through a third-party provider.

25.  Employees are entitled to vacation time which accrues based on time worked. Each Employee's vacation time caps at four weeks and does not roll over year by year; Employees must "use it or lose it."

/ / /

/ / /

WEINTRAUB ZOLKIN TALERICO & SELTH LLP
11766 WILSHIRE BLVD., SUITE 730
LOS ANGELES, CA 90025

26.     The maximum amount of vacation time and sick leave that a single Employee had accrued but not used as of the Petition Date is approximately $6,000, and for most employees is far less.

27.     If the Debtor is unable to honor its Employee Obligations, it is likely that—at the very least—the failure to honor those commitments would lead to a drastic drop in employee morale, loyalty, and work ethic.

28.     If Employees were to leave as a result of that disruption, it could be difficult to hire replacements based upon the unfavorable publicity of the Debtor's failure to honor Employee Obligations, and even if replacements were hired it would take significant time before they were able to be fully trained.

29.     It is my opinion that allowing the Debtor to honor obligations to its Employees for vacation time and sick leave which were earned pre-petition and not yet paid is vital to the continuing success of the Debtor's operations, and by extension, the continuing success of this Bankruptcy Case.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed this 12th day of January 2026 at Los Angeles, California.

Michael Dennis Barwick

SUPPLEMENTAL BARWICK DECLARATION IN SUPPORT OF FIRST DAY MOTIONS

# EXHIBIT 1

# Revised 13
# Week Budget

EXHIBIT 1 - Page 7

**CDS Packaging**
**Weekly Cash Flow Forecast**
**January 12, 2026**

| | | Projected | Projected | Projected | Projected | Projected | Projected | Projected | Projected | Projected | Projected | Projected | Projected | Projected | Projected |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 6 | Week ending ----> | 1/9/26 | 1/16/26 | 1/23/26 | 1/30/26 | 2/6/26 | 2/13/26 | 2/20/26 | 2/27/26 | 3/6/26 | 3/13/26 | 3/20/26 | 3/27/26 | 4/3/26 | 1/9-4/3/26 |
| 7 | *Operating Cash Flow (enter as +)* | | | | | | | | | | | | | | |
| 8 | Cash receipts from A/R collections | 100,000 | 250,000 | 250,000 | 300,000 | 400,000 | 450,000 | 450,000 | 450,000 | 500,000 | 500,000 | 500,000 | 550,000 | 700,000 | 5,400,000 |
| 9 | Cash from turnover of estate assets | 300,000 | | | | | | | | | | | | | 300,000 |
| 10 | | | | | | | | | | | | | | | - |
| 11 | **Total Sources of Cash** | $ 400,000 | $ 250,000 | $ 250,000 | $ 300,000 | $ 400,000 | $ 450,000 | $ 450,000 | $ 450,000 | $ 500,000 | $ 500,000 | $ 500,000 | $ 550,000 | $ 700,000 | $ 5,700,000 |
| 12 | *Operating uses of cash (enter as +)* | | | | | | | | | | | | | | |
| 13 | Payroll | 92,000 | 92,000 | 92,000 | 92,000 | 92,000 | 92,000 | 92,000 | 92,000 | 92,000 | 92,000 | 92,000 | 92,000 | 92,000 | 1,196,000 |
| 14 | Inventory Purchases (COD) | 75,000 | 300,000 | 150,000 | 150,000 | 200,000 | 300,000 | 300,000 | 300,000 | 300,000 | 300,000 | 400,000 | 400,000 | 400,000 | 3,575,000 |
| 15 | Repairs & Maintenance | 750 | 750 | 750 | 750 | 750 | 750 | 750 | 750 | 750 | 750 | 750 | 750 | 750 | 9,750 |
| 16 | Supplies | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 6,500 |
| 17 | Fuel & Propane | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 19,500 |
| 18 | Travel | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 6,500 |
| 19 | Sales & Marketing | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| 20 | Commissions | - | 12,000 | - | - | - | - | 12,000 | - | - | - | 12,000 | - | - | 36,000 |
| 21 | Legal | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| 22 | Professional Services - Other | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| 23 | Bank charges | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 3,250 |
| 24 | Office Supplies | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 3,250 |
| 25 | Dues & Subscriptions | 150 | 150 | 150 | 150 | 150 | 150 | 150 | 150 | 150 | 150 | 150 | 150 | 150 | 1,950 |
| 26 | Overnight Mails Overnight & | 50 | 50 | 50 | 50 | 50 | 50 | 50 | 50 | 50 | 50 | 50 | 50 | 50 | 650 |
| 27 | IT - Software Services/Consulting | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| 28 | Shorts Cash (Over Petty Cash | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 2,600 |
| 29 | Rent | 32,000 | - | - | - | 116,000 | - | - | - | 116,000 | - | - | - | 181,000 | 445,000 |
| 30 | Office Equipment Leases | 600 | 600 | 600 | 600 | 600 | 600 | 600 | 600 | 600 | 600 | 600 | 600 | 600 | 7,800 |
| 31 | Janitoral Services/Supplies | 190 | 190 | 190 | 190 | 190 | 190 | 190 | 190 | 190 | 190 | 190 | 190 | 190 | 2,473 |
| 32 | Internet/Telephone | - | 8,600 | - | - | - | 8,600 | - | - | - | 8,600 | - | - | - | 25,800 |
| 33 | Utilities | - | 11,680 | - | - | - | 11,680 | - | - | - | 11,680 | - | - | - | 35,040 |
| 34 | Insurance | - | - | 29,000 | - | - | - | 29,000 | - | - | - | 29,000 | - | - | 87,000 |
| | Health Insurance | - | - | - | 75,000 | - | - | - | 75,000 | - | - | - | 75,000 | - | 225,000 |
| 36 | Interest | | | | | | | | | | | | | | - |
| 37 | **Total Operating Cash Disbursements** | $ 203,940 | $ 429,220 | $ 275,940 | $ 321,940 | $ 412,940 | $ 417,220 | $ 437,940 | $ 471,940 | $ 512,940 | $ 417,220 | $ 537,940 | $ 571,940 | $ 677,940 | $ 5,689,063 |
| 38 | **Total Operating Cash Flow** | $ 196,060 | $ (179,220) | $ (25,940) | $ (21,940) | $ (12,940) | $ 32,780 | $ 12,060 | $ (21,940) | $ (12,940) | $ 82,780 | $ (37,940) | $ (21,940) | $ 22,060 | $ 10,937 |
| 39 | Total beginning operating cash | 89,000 | 285,060 | 105,840 | 79,899 | 57,959 | 45,019 | 77,799 | 89,858 | 67,918 | 54,978 | 137,758 | 99,817 | 77,877 | 89,000 |
| 40 | **Ending Cash** | $ 285,060 | $ 105,840 | $ 79,899 | $ 57,959 | $ 45,019 | $ 77,799 | $ 89,858 | $ 67,918 | $ 54,978 | $ 137,758 | $ 99,817 | $ 77,877 | $ 99,937 | $ 99,937 |
| 42 | **Beginning Accounts Receivable Balance** | 1,185,957 | 1,335,957 | 1,385,957 | 1,485,957 | 1,485,957 | 1,435,957 | 1,385,957 | 1,385,957 | 1,435,957 | 1,435,957 | 1,435,957 | 1,435,957 | 1,385,957 | 1,185,957 |
| 43 | Sales | 250,000 | 300,000 | 350,000 | 300,000 | 350,000 | 400,000 | 450,000 | 500,000 | 500,000 | 500,000 | 500,000 | 500,000 | 550,000 | (5,400,000) |
| 44 | Cash receipts | (100,000) | (250,000) | (250,000) | (300,000) | (400,000) | (450,000) | (450,000) | (450,000) | (500,000) | (500,000) | (500,000) | (550,000) | (700,000) | (5,400,000) |
| 45 | **Ending Accounts Receivable Balance** | $ 1,335,957 | $ 1,385,957 | $ 1,485,957 | $ 1,485,957 | $ 1,435,957 | $ 1,385,957 | $ 1,385,957 | $ 1,435,957 | $ 1,435,957 | $ 1,435,957 | $ 1,435,957 | $ 1,385,957 | $ 1,235,957 | 1,235,957 |
| | **Ending Cash and Receivables** | $ 1,621,017 | $ 1,491,797 | $ 1,565,856 | $ 1,543,916 | $ 1,480,976 | $ 1,463,756 | $ 1,475,815 | $ 1,503,875 | $ 1,490,935 | $ 1,573,715 | $ 1,535,774 | $ 1,463,834 | $ 1,335,894 | $ 1,335,894 |
| | **Cash and Receivables at Petition** | $ 1,247,010 | | | | | | | | | | | | | |

**EXHIBIT 1**

EXHIBIT 1 - Page 8

# EXHIBIT 2

# Utilities

**EXHIBIT 2 - Page 9**

| Service provider | Location | Utility | Approximate cost per month |
|---|---|---|---|
| California Water Service Co. | Compton | Water | $500.00 |
| Southern California Edison | Compton | Power | $3,600.00 |
| SoCalGas | Compton | Gas | $110.00 |
| Republic Services | Compton | Waste | $1,000.00 |
| Waste Management Hayward | Hayward | Waste | $500.00 |
| Pacific Gas and Electric | Hayward | Power | $1,000.00 |
| Pacific Gas and Electric | Sacramento | Power | $60.00 |
| Sacramento Municipal Utility District | Sacramento | Power | $800.00 |
| Republic Services | Sacramento | Waste | $500.00 |
| City of North Las Vegas | Las Vegas | Waste | $400.00 |
| NV Energy | Las Vegas | Power | $210.00 |
| Groot Industries Inc. | Chicago | Waste | $500.00 |
| ComEd | Chicago | Power | $1,500.00 |
| Nicor Gas | Chicago | Gas | $1,000.00 |
| | | Total | $11,680.00 |

Compton total
$5,210.00

Hayward total
$1,500.00

Sacramento total
$1,360.00

Las Vegas total
$610.00

Chicago total
$3,000.00

EXHIBIT 2

EXHIBIT 2 - Page 10

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:
   11766 Wilshire Blvd, Suite 730, Los Angeles, CA 90025

A true and correct copy of the foregoing document entitled (*specify*): **SUPPLEMENTAL OMNIBUS DECLARATION OF MICHAEL DENNIS BARWICK IN SUPPORT OF FIRST DAY MOTIONS,** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) January 12, 2026, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

- Proposed Attorneys for Debtor C.D.S. Moving Equipment, Inc.: **Derrick Talerico**:  dtalerico@wztslaw.com; maraki@wztslaw.com; sfritz@wztslaw.com; admin@wztslaw.com
- Attorneys for Creditor American Express National Bank, c/o Zwicker & Associates, P.C.: **Jonathan Arias**: bknotices@zwickerpc.com
- Attorneys for Creditor COMREF SO. CA. INDUSTRIAL SUB G, LLC: **Ronald K Brown**:  ron@rkbrownlaw.com
- Attorneys for Creditor Pathward, National Association: **Thomas E Shuck**:  tshuck@pmcos.com; efilings@pmcos.com
- Attorneys for Creditor JP Morgan Chase Bank, N.A.: **Rebecca M Wicks**:  rwicks@buchalter.com; lverstegen@buchalter.com; docket@buchalter.com
- US Trustee's Office: ustpregion16.la.ecf@usdoj.gov; **Hatty K Yip**:  hatty.yip@usdoj.gov; hatty.k.yip@usdoj.gov

☐ Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:
On (*date*)_____, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) _____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

Pursuant to the Judicial Practice Guide of the Honorable Julia W. Brand, chambers copies are waived unless requested.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| January 12, 2026 | Martha E. Araki | /s/ Martha E. Araki |
|---|---|---|
| Date | Printed Name | Signature |

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                                    **F 9013-3.1.PROOF.SERVICE**