Thomas E. Shuck SBN 116228
PARKER, MILLIKEN, CLARK,
O'HARA & SAMUELIAN
A Professional Corporation
515 S. Figueroa St., 8th Floor
Los Angeles, California 90071
Telephone:   (213) 683-6500
Facsimile:    (213) 683-6669
Email: tshuck@pmcos.com

Thomas Coughlin (P40561)
Kimberly Ross Clayson (P69804)
Anthony Cimini (P86223)
TAFT STETTINIUS & HOLLISTER LLP
27777 Franklin Road, Suite 2500
Southfield, MI 48034
Telephone: (248) 351-3000
tcoughlin@taftlaw.com
kclayson@taftlaw.com
acimini@taftlaw.com
(Pro Hac Vice Admissions Pending)

Attorneys for Creditor

PATHWORD, NATIONAL ASSOCIATION

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**LOS ANGELES DIVISION**

| | |
|---|---|
| In re:<br>C.D.S. Moving Equipment, Inc.,<br>            Debtor, | Case No. 2:25-bk-21646-WB<br><br>Chapter 11<br><br>**MOTION FOR APPOINTMENT OF A CHAPTER 11 TRUSTEE AND MEMORANDUM OF LAW IN SUPPORT**<br><br>Date:   January 14, 2026<br>Time:  1:30 p.m.<br>Place:  Courtroom: 1375<br>            U.S. Bankruptcy Court<br>            255 East Temple Street<br>            Los Angeles, CA 90012<br><br>Honorable Julia W. Brand |

Pathward, National Association, a national banking corporation ("Pathward"), through its attorneys, Taft Stettinius & Hollister LLP and Parker, Milliken, Clark, O'Hara & Samuelian, a Prof. Corp., by its *Motion for Appointment of a Chapter 11 Trustee* (the "Motion") requests entry of an order under Section 1104 of Title 11, United States Code Sec. 101 *et seq.* (the "Bankruptcy Code") appointing a Chapter 11 trustee in the above-captioned Chapter 11 bankruptcy case (the "Chapter 11 Case") of C.D.S. Moving Equipment, Inc. ("CDS" or the "Debtor").

In support of the Motion, Pathward incorporates by reference the *Declaration of Jarad W. LaCroix, Director of Portfolio, Asset Based Lending for Pathward, National Association* [Doc 33] (the "Declaration") and respectfully states as follows:

## PRELIMINARY STATEMENT

1. On December 23, 2025, just a week prior to the Debtor's December 29, 2025 (the "Petition Date") filing of the above-captioned bankruptcy proceeding (the "Bankruptcy Proceeding"), Pathward filed suit against the Debtor seeking, among other things, appointment of a receiver in connection with the Debtor's fraud and myriad defaults under a Credit and Security Agreement dated May 7, 2025 (the "Credit Agreement"), a Revolving Loan Schedule dated May 7, 2025 (the "Revolving Loan Schedule"), and a Revolving Note in the principal amount of $7,000,000.00 dated May 7, 2025 (the "Revolving Note") (collectively, the "Loan Documents"), all in favor of Pathward. **Exhibit 1,** Credit Agreement, Revolving Loan Schedule, and Revolving Note.[1]

2. The Debtor defaulted under the Loan Documents in several ways, including, but not limited to: (a) failing to maintain the Advance Formula under Article 2.1(d) of the Revolving Loan Schedule; (b) failing to deposit funds it received from Debtors in the Lockbox Account as required by Article 4.6(b) of the Credit Agreement,

---

[1] Capitalized terms not otherwise defined herein are defined in the Loan Documents. True and correct copies of which are attached as **Exhibit 1.**

and failing to reflect the collection of the funds it collected in its borrowing requests; (c) failing to provide the required financial statements and reports required under Articles 6.12 and 6.13 in the Credit Agreement; (d) forming another entity Ultrapak Packaging, Inc., a Nevada corporation ("Ultrapak") and selling CDS's inventory to Ultrapak in order to report false receivables to Pathward to artificially inflate CDS's reported accounts receivable and borrowing base, thereby inducing Pathward to extend or maintain Revolving Loans it would not have made if CDS's receivables and Collateral had been accurately reported; and (e) permitting a Change in Control of CDS, which constitutes an Event of Default under Article 9.9 of the Credit Agreement (collectively, the "Loan Defaults").

3. The Loan Defaults committed by the Debtor prepetition are indicative of the Debtor's gross mismanagement of its business affairs by failing to (a) hold in trust and turn over to Pathward cash receipts (as agreed to and required by the Loan Documents), (b) truthfully and accurately prepare required financial reports, and (c) making use of Debtor resources to fund its principal's personal hobbies. Moreover, Debtor's prepetition conduct shows its propensity to willingly transfer significant assets of the debtor to a related entity for no consideration while concealing the same from Pathward, its largest and only secured creditor.

## JURISDICTION AND VENUE

4. This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper pursuant to 28 U.S.C. 1408 and 1409. This is a core proceeding pursuant to 28 U.S.C. § 157(b). The statutory basis for the relief requested herein is Bankruptcy Code § 1104.

## STATEMENT OF FACTS

### *The Credit Agreement, Revolving Loan Schedule, and Note*

5. Under Article 4.1 of the Credit Agreement, CDS granted Pathward a continuing Lien and security interest in substantially all of CDS's personal property,

which constitutes Collateral, which is defined as:

> [A]ll of the personal property in which any Borrower has any interest, whether now existing or hereafter acquired, wherever located, including all: (a) Accounts, (b) Inventory, (c) Equipment, (d) furniture and Fixtures, (e) General Intangibles, Payment Intangibles, and Intellectual Property, (f) Investment Property, (g) Deposit Accounts and monies credited by or due from any financial institution or other depository, (h) Chattel Paper, Instruments, and Documents, (i) Goods, (j) Commercial Tort Claims, (k) Letter-of-Credit Rights, (l) Contract Rights, (m) Books and records, computer software, computer programs, and supporting obligations relating to any of the foregoing, and (n) Proceeds of any of the foregoing in whatever form (collectively the "Collateral").

6. Article 2.1(a) of the Credit Agreement provides that, subject to the Credit Agreement and the Revolving Loan Schedule, Pathward may make Advances to CDS "in an aggregate amount not to exceed at any one time outstanding the Maximum Borrowing Amount," and that the Revolving Loans are evidenced by the Note.

7. Article 2.1(c) of the Credit Agreement provides that "[t]he Revolving Loan Outstanding may not at any time exceed the Maximum Borrowing Amount (and if it does for any reason [CDS] shall immediately and without demand pay the excess to Pathward)."

8. Article 2.1(d) of the Revolving Loan Schedule defines the "Advance Formula," and the Revolving Loan Schedule further sets forth the structure of the borrowing base and Maximum Borrowing Account:

> (d) "Advance Formula" means, at any time, the sum of:
>
> (A) ninety percent (90%) of Eligible Accounts, plus
>
> (B) the lesser of (i) fifty percent (50%) of Eligible Inventory, (ii) one hundred and twenty five percent (125%) of subpart (A) above from May 1 through October 31 of each year, and two hundred percent (200%) of subpart (A) above from November 1 through April 30 of each year, and (iii) $3,000,000.00, minus,
>
> (C) all Reserves.

9. Under Articles 4.6(a) and (b) of the Credit Agreement, the Debtor must (a) notify all [a]ccount [d]ebtors and other [d]ebtors to remit payments to the Lockbox Account; (b) direct remittance addresses on account documents to the Lockbox Account; and (c) if CDS "receives any funds from a Debtor, or if [CDS] receives any proceeds of insurance, tax refunds or any and all other funds of any kind," the Debtor "shall hold such funds *in trust* for [Pathward], shall not mix such funds received with any other funds, and shall immediately deposit such funds in the Lockbox Account in the form received," (emphasis added).

10. Article 4.6(b) of the Credit Agreement further states that Pathward "will have sole ownership, possession and control over the Lockbox Account and all deposits in the Lockbox Account," and that CDS does not have "any right to the Lockbox Account or any deposits in the Lockbox Account."

*CDS Defaults and Fails to Cure Its Defaults*

11. CDS failed to comply with Article 4.6 of the Credit Agreement by receiving funds from numerous account debtors and other debtors and failing to deposit those funds into the Lockbox Account in the form received, instead retaining or diverting them and failing to hold them in trust for Pathward. The Debtor also failed to reflect the collection of the funds it collected in its borrowing requests. For example, the Loan Defaults include:

    a. On July 7, 2025 (merely 5 weeks after Pathward funded the Debtor under the Loan Documents), Pathward conducted a routine compliance audit of the Debtor's loan account that revealed that the Debtor had failed to deliver as required at least $798,000 of cash receipts to the Lockbox Account since the time that Pathward had funded the Debtor under the Revolving Note.

    b. Pathward's July 7, 2025 compliance audit also revealed that there was an 18-day lag between the time that the Debtor received cash receipts that

were due to the Lockbox Account and the time that the debtor deposited such cash receipts to the account lockbox.

 c. On August 11, 2025, the Debtor admitted to Pathward that it had received and never remitted to the Lockbox Account as required at least $1.6 million in cash receipts from credit card payments it had received.

 d. Causing the 100 percent ownership of the company to transfer from Ryan Joseph Sider to the Debtor's President, Michael Dennis Barwick without Pathward's consent which resulted in an improper change in control of the Debtor.

12. The Debtor, acting through its principal, Dennis Barrick, used $250,000 of the Debtor's cash to acquire and/or fund related entity, Ultrapak, in violation of the Debtor's loan covenants. Thereafter, the Debtor transferred inventory to Ultrapak while reporting a receivable $540,000 from Ultrapak to Pathward, even though, on information and belief, Ultrapak did not pay CDS in good funds and the transaction was not an arm's-length sale, thereby inflating CDS's reported receivables and borrowing base and misrepresenting the nature and value of Pathward's Collateral.

13. The Debtor allowed a Change in Control to occur, which constitutes an Event of Default under Article 9.9 of the Credit Agreement.

14. To make matters worse, after the Debtor (or its principal) acquired Ultrapak, the Debtor transferred inventory based on either an at-cost or at-a-loss valuation and reported a corresponding $540,000 receivable owed from Ultrapak to Pathward. The inventory sale was to an affiliate, not an arm's-length sale and improperly inflated the Debtor's reported receivables and borrowing base and misrepresented the nature and value of Pathward's Collateral.

15. The Debtor's misrepresentation of the Ultrapak receivable induced Pathward to permit the debtor to exceed the Advance Formula, were it not for this misrepresentation would have not been permitted. After recalculation of the Advance

MOTION FOR APPOINTMENT OF A CHAPTER 11 TRUSTEE
6

Formula less the Ultrapak receivable, the Debtor had exceeded its borrowing base by more than $900,000.

16. To date, Pathward has also uncovered financial information of the Debtor that indicates that the Debtor was funding the boarding and care costs for a race horse belonging to the Debtor's principal to the tune of $12,5000 weekly for at least a 6-week period of 2025.

17. The Debtor also failed to provide the required financial statements and reports required under Articles 6.12 and 6.13 in the Credit Agreement.

18. Pathward anticipates that additional misrepresentations and violations of the Loan Documents are likely to be unsurfaced with further investigation.

***The Debtor's Post-Petition Conduct***

19. The Debtor commenced the Bankruptcy Proceeding without representation of legal counsel. Although the Debtor has since course corrected and hired counsel to prevent dismissal of the Bankruptcy Proceeding, this setback has delayed the timely progression of the Bankruptcy Proceeding by at least 3 weeks and resulted in at least one missed week of payroll for the Debtor's employees (the result of the Debtor's failure to timely and properly prosecute its first motion for authority to use cash collateral [Doc 4]).[2]

20. The Debtor also submitted its list of creditors for its noticing matrix in this Bankruptcy Proceeding (the "Noticing Matrix") without including Pathward, its largest and only secured creditor. Pathward only learned of the Bankruptcy Proceeding 3 days after the Petition Date, on January 2, 2026 when the Debtor was not able to meet its payroll obligations for the week.

---

[2] On January 9, 2026, Pathward authorized the Debtor's use of cash to fund the missed week of payroll for week-ending January 2, 2026 together with week ending January 9, 2026 payroll. The Debtor represented the missed payroll would be funded on January 9, 2026.

MOTION FOR APPOINTMENT OF A CHAPTER 11 TRUSTEE

7

4932-1566-1447.1

21. Then, on or about January 5, 2026, while Debtor's first cash collateral motion was pending, without notice Pathward's read-only access to the Debtor's bank accounts was terminated preventing Pathward from viewing and monitoring Debtor's bank account transactions and eliminating its ability to evaluate the accuracy of the Debtor's projected budget.

## AUTHORITY

22. The Court should appoint a Chapter 11 trustee under Bankruptcy Code section 1104(a) because either (i) "cause" exists or (ii) doing so would be in the "interests of creditors, any equity security holders, and other interests of the estate." 11 U.S.C. § 1104(a)(1),(2). The Debtor's prepetition conduct and material misrepresentations to Pathward demonstrate both cause and that appointment of a Chapter 11 trustee is in the interest of creditors and other interests of the estate.

23. Section 1104(a)(1) provides that the Court "*shall* order the appointment of a trustee for cause, including fraud, dishonesty, incompetence or gross mismanagement of the affairs of the debtor by current management, either before or after the commencement of the case." 11 U.S.C. § 1104(a)(1) (emphasis added).

24. The enumerated list of wrongs constituting "cause" that warrants the appointment of a trustee is not exhaustive. *See, e.g., In re Sharon Steel Corp.*, 86 B.R. 455, 458 (Bankr. W.D. Pa. 1988), *aff'd*, 871 F.2d 1217 (3d Cir. 1989) ("Under § 1104(a)(1), the words 'or similar cause' and § 102(3) indicates that the grounds for appointing a trustee are not limited to those specifically enumerated."). "Accordingly, courts have found cause present pursuant to § 1104(a)(1) in circumstances demonstrating conflicts of interest; misuse of assets and funds; inadequate recordkeeping and reporting; failure to file required documents; lack of adequate disclosure; lack of appropriate cost controls; transgressions related to taxes; failure to make required payments; lack of credibility and creditor confidence; and breaches of fiduciary duties." *In re Vascular Access Centers, L.P.*, 611 B.R. 742, 764 (Bankr. E.D. Pa. 2020). A court may consider

both the pre- and post-petition misconduct of the current management when making the determination that "cause" exists for the appointment of a trustee. *Id.* 767 (appointing trustee where both debtor's principal's "prepetition and postpetition misconduct clearly warrant the appointment of a Chapter 11 Trustee"). "[T]he appointment of a trustee is mandatory upon a determination of cause." *In re Marvel Entm't Grp., Inc.*, 140 F.3d 463, 472 (3d Cir. 1998).

25.   Moreover, even "if there is insufficient cause to appoint a trustee under § 1104(a)(1), or if the cause cannot be proven, a trustee may still be appointed [under section 1104(a)(2)]." *In re Sharon Steel Corp.*, 86 B.R. at 458. Section 1104(a)(2) "creates a flexible standard, instructing the court to appoint a trustee when doing so addresses 'the interests of the creditors, equity security holders, and other interests of the estate.'" *Id.* at 1226 (quoting 11 U.S.C. § 1104(a)(2)); *see also Obsidian Fin. Group, LLC v. Cox*, 740 F.3d 1284, 1293 (9th Cir. 2014) ("A Chapter 11 trustee can be appointed by the bankruptcy court for cause or when the best interests of the estate or creditors dictate.") (citing 11 U.S.C. § 1104(a)).

A.   **There Is "Cause" to Appoint a Trustee**

26.   "[T]he willingness of courts to leave debtors in possession 'is premised upon an assurance that the officers and managing employees can be depended upon to carry out the fiduciary responsibilities of a trustee.'" *See In re Circulatory Centers of Am., LLC*, 579 B.R. 752, 764 (Bankr. W.D. Pa. 2017) (quoting *In re BG Petroleum, LLC*, 525 B.R. 260, 282 (Bankr. W.D. Pa. 2015)). And "[a] debtor-in-possession's inability or unwillingness to discharge its fiduciary responsibilities necessitates the appointment of an independent trustee who can." *In re Vascular Access Centers, L.P.*, 611 B.R. at 764.

27.   Here cause exists to appoint a Chapter 11 trustee. As shown in the Debtor's prepetition conduct, it merely took weeks after its loan was funded for the Debtor to violate its loan covenants to Pathward. This leaves little confidence in the Debtor's capabilities to maintain its debtor-in-possession fiduciary obligations required of Chapter

11 debtors. With respect to Pathward, the Debtor was obligated to hold funds that were not delivered to the Lockbox Account "in trust" and segregated from other funds, and the Debtor was to direct those funds to the Lockbox Account. The Debtor, in its own admission was not able to comply with this basic requirement to the tune of at $1.6 million in funds that the Debtor received but that never made it to the Lockbox Account. This clear disregard of the Debtor's fiduciary obligations under the Loan Documents, and this inability to follow very basic borrower obligations reflects a pattern of conduct that is not likely to change merely because the Debtor has filed for bankruptcy.

28. The Debtor's transfer of $250,000 of cash to fund the unapproved acquisition of Ultrapak is indicative of the Debtor's lack of regard for proper cash management. This transaction is made even more egregious by the Debtor's subsequent use of Ultrapak to improperly gross up its borrowing base by improperly reporting a receivable $540,000 of a related party. *See In re Clinton Centrifuge, Inc.*, 85 B.R. 980, 985 (Bankr. E.D. Pa. 1988) ("There are a plethora of decisions justifying the appointment of a trustee, pursuant to 11 U.S.C. § 1104(a)(1), because of questionable business dealings between a debtor corporation and a related, nondebtor entity." (collecting cases)).

29. By way of further example, the use of the Debtor's cash for its principal's expenses such as the $12,500 weekly (at least $75,000) paid for the boarding expense for a race horse does not instill trust that the Debtor can operate its business without putting its principal's interests firsts. *See In re Circulatory Centers of Am., LLC*, 579 B.R. at 764 (appointing trustee where court found "the Debtors' principals are advancing their own personal interests at the expense of creditors in the bankruptcy estate in derogation of their fiduciary duties").

30. To date, this Motion reflects what is known about the Debtor's use of cash for improper and unapproved purposes and demonstrate, the Debtor's principal is wholly unbothered with managing the Debtor's cash for the Debtor's and its creditors' benefit.

MOTION FOR APPOINTMENT OF A CHAPTER 11 TRUSTEE
10

Instead, the Debtor has leveraged its cash to promote its principal's and related entity, Ultrapak's interests. Moreover, has used Ultrapak to create a false representation of the Debtor's receivables. *See In re Sharon Steel Corp.*, 86 B.R. at 463 (holding appointment of trustee was "mandatory under both § 1104(a)(1) or § 1104(a)(2)" where there was "conclusive evidence of self-dealing [and] transfer of huge assets to other companies under common control with [debtor] and away from the reach of creditors, stripping the debtor of cash [and] depleting the assets of the debtor so as to require working capital loans").

31. The Debtor has obliterated Pathward's trust in its operations and, rightfully so, Pathward has made know to the court and to the Debtor that Pathward is staunchly opposed to the Debtor's use of cash collateral without the appointment of a chapter 11 trustee. Pathward's distrust in the Debtor has only deepened with the commencement of this case. The Debtor filed this case, initially without counsel causing significant delay in prosecuting first-day motions (one the most critical stages of a Chapter 11 case) and caused significant uncertainty in the progression of the case. Additionally, the Debtor omitted Pathward, its largest and only secured creditor from its Noticing Matrix and waited until January 2, 2026 to inform Pathward of its December 29, 2025 Petition Date. Pathward lost complete trust in the Debtor's ability to manage its business prepetition and the Debtor's early conduct in the case have only affirmed its distrust. Thus, conflict and animosity between the Debtor and Pathward are likely to continue without the designation of a neutral fiduciary in whom both the Debtor and Pathward can entrust the Debtor's business operations. *See In re Marvel Entm't Grp., Inc.*, 140 F.3d at 473 (Finding cause under § 1104(a)(1) in light of an "unhealthy conflict of interest [that] was manifest in the deep-seeded conflict and animosity between the [] debtor and the Lenders and in the lack of confidence all creditors had in the [debtor's controller's] ability to act as fiduciaries"); *In re Shubh Hotels Pittsburgh, LLC*, No. 312, 2011 WL 7145601, at *4 (Bankr. W.D. Pa. Feb. 1, 2011) (Appointing trustee in light of high level of "animosity

and acrimony" between debtor and creditor because "without the interjection of a neutral third party, it is clear to the Court that litigation costs will bury this case in the absence of a change of direction"); *In re Sharon Steel Corp.*, 86 B.R. at 460 ("Irrespective of 'fault,' if the conflict among the interested parties threatens the viability of the business and is detrimental to the welfare of the estate, the appointment of an independent trustee is appropriate in order to insulate the ongoing business activities from such conflict.").

### B. Appointing a Trustee Is in the Interests of All Parties.

32. Even if the Court finds there are no grounds for cause, the Court should appoint a trustee under the interest of creditors' test of subsection (a)(2). Among the factors the court may consider in appointing a trustee under Section 1104(a)(2) are: (i) the trustworthiness of the debtor; (ii) the debtor in possession's past and present performance and prospects for the debtor's rehabilitation; (iii) the confidence – or lack thereof – of the business community and of creditors in present management; and (iv) the benefits derived by the appointment of a trustee, balanced against the cost of the appointment.

*In re Vascular Access Centers, L.P.*, 611 B.R. at 765. However, "subsection (a)(2) envisions a flexible standard." In re Sharon Steel Corp., 871 F.2d at 1226. "Frequently, findings of 'cause' [under 1104(a)(1)] and 'best interests' [under 1104(a)(2)] are 'intertwined and dependent on the same facts.' In re Grasson, 490 B.R. 500, 506 (Bankr. E.D. Pa. 2013)). Under this section, the court is empowered to use its broad equity powers to engage in a cost-benefit analysis of the impact of appointing a chapter 11 trustee." *Id.* at 765 (internal citation omitted); *see also In re Pasadena Adult Residential Care, Inc.*, 2015 Bankr. LEXIS 3579, *45 (Bankr. C.D. Cal. Oct. 22, 2015) ("With respect to whether a trustee should be appointed under Section 1104(a)(2) of the Bankruptcy Code, 11 U.S.C., the courts look to the totality of the circumstances. *See In re Hotel Associates, Inc.*, 3 B.R. 343, 345 (Bankr. E.D. Pa. 1980) (The bankruptcy courts

'look to the practical realities and necessities inescapably involved in reconciling competing interest.'). The appointment of a trustee under 11 U.S.C. § 1104(a)(2) is appropriate, for example, where there is gross mismanagement and continued financial excesses by current management to protect the interests of the estate and creditors. *See In re La Sherene, Inc.*, 3 B.R. 169, 175–76 (Bankr. N.D. Ga. 1980)."

33. As set forth in detail above, the factors supporting appointment under section 1104(a)(2) of the Bankruptcy Code all weigh heavily against the Debtor remaining in possession.

34. *First*, the Debtor cannot be trusted to manage this case as a fiduciary in the best interests of creditors. Appointing a trustee is justified to reestablish trust and confidence in the Debtor's management. *See, e.g., In re Sharon Steel Corp.*, 86 B.R. at 460 (noting "enormous benefit to be achieved by the establishment of trust and confidence in [debtor's] management").

35. *Second*, Pathward, the Debtor's largest creditor, rightfully has no confidence in management and control of the Debtor. Indeed, as described above, there is significant acrimony between Pathward and the Debtor caused by the Debtor's withholding of material information and assets from Pathward and willingness to omit Pathward from its Noticing Matrix. *See In re Marvel Entm't Grp., Inc.*, 140 F.3d at 474 ("The level of acrimony found to exist in this case certainly makes the appointment of a trustee in the best interests of the parties and the estate" under section 1104(a)(2).).

36. *Third*, the benefits of appointing a trustee far outweigh the costs. Once appointed, the trustee would assume immediate control and oversight over the Debtor's assets, and will promote the Debtor's ability to enter into a cash collateral arrangement for the duration of the case without protracted litigation over the same.

## CONCLUSION

For all of the reasons stated above, Pathward respectfully requests that this Court: (i) appoint a Chapter 11 trustee, or, in the alternative, and (ii) grant such other and further relief as the Court may deem just and proper.

Respectfully submitted,

Dated: January 12, 2026

PARKER, MILLIKEN, CLARK, O'HARA & SAMUELIAN, APC

_____
Thomas E. Shuck, Attorneys for
PATHWARD, NATIONAL
ASSOCIATION

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:
515 S. Figueroa St. 8th Floor Los Angeles, CA 90071

A true and correct copy of the foregoing document entitled: **MOTION FOR APPOINTMENT OF A CHAPTER 11 TRUSTEE AND MEMORANDUM OF LAW IN SUPPORT** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On *(date)* Jan. 12, 2026, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

- United States Trustee (LA)    ustpregion16.la.ecf@usdoj.gov
- Hatty K Yip    hatty.yip@usdoj.gov, hatty.k.yip@usdoj.gov
- Derrick Talerico  -  dtalerico@wztslaw.com
  zwicker & Associates, P.C. bknotices@zwickerpc.com
- 

☐ Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL**:
On _____, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on 01-12-26, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.
The Honorable Julia B. Brand
Courtroom 1375
U.S. Bankruptcy Court
255 East Temple Street
Los Angeles, CA 90012

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| Jan. 12, 2026 | Rosemary Pinal | /s/ Rosemary Pinal |
|---|---|---|
| Date | Printed Name | Signature |

---

This form is mandatory. It has been approved for use in the United States Bankruptcy Court for the Central District of California.