Thomas E. Shuck SBN 116228
PARKER, MILLIKEN, CLARK,
O'HARA & SAMUELIAN
A Professional Corporation
515 S. Figueroa St., 8th Floor
Los Angeles, California 90071
Telephone:   (213) 683-6500
Facsimile:    (213) 683-6669
Email: tshuck@pmcos.com

Thomas Coughlin (P40561)
Kimberly Ross Clayson (P69804)
Anthony Cimini (P86223)
TAFT STETTINIUS & HOLLISTER LLP
27777 Franklin Road, Suite 2500
Southfield, MI 48034
Telephone: (248) 351-3000
tcoughlin@taftlaw.com
kclayson@taftlaw.com
acimini@taftlaw.com
(Pro Hac Vice Admissions Pending)

Attorneys for Creditor
PATHWORD, NATIONAL ASSOCIATION

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA  - LOS ANGELES DIVISION**

| | |
|---|---|
| In re:<br><br>C.D.S. Moving Equipment, Inc.,<br><br>Debtor, | Case No. 2:25-bk-21646-WB<br>Chapter 11<br><br>**DECLARATION OF JARAD W. LACROIX, DIRECTOR OF PORTFOLIO, ASSET BASED LENDING FOR PATHWARD, NATIONAL ASSOCIATION IN SUPPORT OF ITS MOTION FOR APPOINTEMENT OF CHAPTER 11 TRUSTEE AND MEMORANDUM OF LAW IN SUPPORT OF OBJECTION TO EMERGENCY MOTION FOR ORDER (i) AUTHORIZING DEBTOR'S USE OF CASH COLLATERAL PURSUANT  TO 11 U.S.C. § 363 AND FED. R. BANK PROC. 4001, and (ii) DIRECTING TURNOVER OF ESTATE PROPERTY PURSUANT TO 11 U.S.C. § 542**<br><br>Date:    January14, 2026<br>Time:   1:30 P.M.<br>Place:   Courtroom:  1375<br>             U.S. Bankruptcy Court<br>             255 East Temple Street<br>             Los Angeles, CA 90012 |

4907-6507-4823.1

I **JARRAD W. LACROIX** hereby declare:

1. I am an individual over the age of 18 and the Director of Portfolio, Asset Based Lending for Pathward, National Association ("Pathward").

2. Each of the facts contained in this declaration is based upon my personal knowledge and, if called as a witness, I could and would competently testify thereto.

3. The Debtor filed its voluntary Chapter 11 on December 29, 2025 (the "Petition Date"), but failed to include Pathward on its matrix and failed to advise Pathward of the bankruptcy filing until January 2, 2026.

4. On December 23, 2025, Pathward sued the Debtor seeking, among other things, appointment of a receiver, in connection with the Debtor's fraud and myriad defaults under a Credit and Security Agreement dated May 7, 2025 (the "Credit Agreement"), a Revolving Loan Schedule dated May 7, 2025 (the "Revolving Loan Schedule"), and a Revolving Note in the principal amount of $7,000,000.00 dated May 7, 2025 (the "Revolving Note") (collectively, the "Loan Documents"), all in favor of Pathward.[1]

5. As of the Petition Date, the total amount due and owing by the Debtor to Pathward under the Loan Documents was approximately $2,368,790.85.

6. The Debtor defaulted under the Loan Documents in several ways, including, but not limited to: (a) failing to maintain the Advance Formula under Article 2.1(d) of the Revolving Loan Schedule; (b) failing to deposit funds it received from Debtors in the Lockbox Account as required by Article 4.6(b) of the Credit Agreement, and failing to reflect the collection of the funds it collected in its borrowing requests; (c) failing to provide the required financial statements and

---

[1] Capitalized terms not otherwise defined herein are defined in the Loan Documents. True and correct copies of which are attached as **Exhibit 1.**

reports required under Articles 6.12 and 6.13 in the Credit Agreement; (d) forming another entity (Ultrapak Packaging, Inc., a Nevada corporation ("Ultrapak") and selling CDS's inventory to Ultrapak in order to report false receivables to Pathward to artificially inflate CDS's reported accounts receivable and borrowing base, thereby inducing Pathward to extend or maintain Revolving Loans it would not have made if CDS's receivables and Collateral had been accurately reported; and 9e) permitting a Change in Control of CDS, which constitutes an Event of Default under Article 9.9 of the Credit Agreement (collectively, the "Loan Defaults").

7. Under Article 4.6(a) of the Credit and Security Agreement, CDS must direct its Account Debtors and other Debtors "to remit all payments due" to CDS to a Lockbox Account, and, under Article 4.6(b) of the Credit Agreement, if CDS "receives any funds from a Debtor," or other specified funds, CDS "shall hold such funds in trust for [Pathward], shall not mix such funds received with any other funds, and shall immediately deposit such funds in the Lockbox Account in the form received," with Pathward having "sole ownership, possession and control over the Lockbox Account and all deposits in the Lockbox Account," and CDS having no right to that account or its deposits.

*The Credit Agreement, Revolving Loan Schedule, and Note*

8. Under Article 4.1 of the Credit Agreement, CDS granted Pathward a continuing Lien and security interest in substantially all of CDS's personal property, which constitutes Collateral, which is defined as:

> [A]ll of the personal property in which any Borrower has any interest, whether now existing or hereafter acquired, wherever located, including all: (a) Accounts, (b) Inventory, (c) Equipment, (d) furniture and Fixtures, (e) General Intangibles, Payment Intangibles, and Intellectual Property, (f) Investment Property, (g) Deposit Accounts and monies credited by or due from any financial institution or other depository, (h)

Chattel Paper, Instruments, and Documents, (i) Goods, (j) Commercial Tort Claims, (k) Letter-of-Credit Rights, (l) Contract Rights, (m) Books and records, computer software, computer programs, and supporting obligations relating to any of the foregoing, and (n) Proceeds of any of the foregoing in whatever form (collectively the "Collateral").

9. Article 2.1(a) of the Credit Agreement provides that, subject to the Credit Agreement and the Revolving Loan Schedule, Pathward may make Advances to CDS "in an aggregate amount not to exceed at any one time outstanding the Maximum Borrowing Amount," and that the Revolving Loans are evidenced by the Note.

10. Article 2.1(c) of the Credit Agreement provides that "[t]he Revolving Loan Outstanding may not at any time exceed the Maximum Borrowing Amount (and if it does for any reason [CDS] shall immediately and without demand pay the excess to Pathward)."

11. Article 2.1(d) of the Revolving Loan Schedule defines the "Advance Formula," and the Revolving Loan Schedule further sets forth the structure of the borrowing base and Maximum Borrowing Account:

> (d) "Advance Formula" means, at any time, the sum of:
>
> (A) ninety percent (90%) of Eligible Accounts, plus
>
> (B) the lesser of (i) fifty percent (50%) of Eligible Inventory, (ii) one hundred and twenty five percent (125%) of subpart (A) above from May 1 through October 31 of each year, and two hundred percent (200%) of subpart (A) above from November 1 through April 30 of each year, and (iii) $3,000,000.00, minus
>
> (C) all Reserves.

12. Under Articles 4.6(a) and (b) of the Credit Agreement, the Debtor must (a) notify all [a]ccount [d]ebtors and other [d]ebtors to remit payments to the Lockbox Account; (b) direct remittance addresses on account documents to the Lockbox Account; and (c) if CDS "receives any

funds from a Debtor, or if [CDS] receives any proceeds of insurance, tax refunds or any and all other funds of any kind," the Debtor "shall hold such funds *in trust* for [Pathward], shall not mix such funds received with any other funds, and shall immediately deposit such funds in the Lockbox Account in the form received," (emphasis added).

13.  Article 4.6(b) of the Credit Agreement further states that Pathward "will have sole ownership, possession and control over the Lockbox Account and all deposits in the Lockbox Account" and that CDS does not have "any right to the Lockbox Account or any deposits in the Lockbox Account."

*CDS Defaults and Fails to Cure Its Defaults*

> a. The Debtor failed to comply with Article 4.6 of the Credit Agreement by receiving funds from numerous account debtors and other debtors and failing to deposit those funds into the Lockbox Account in the form received, instead retaining or diverting them and failing to hold them in trust for Pathward. The Debtor also failed to reflect the collection of the funds it collected in its borrowing requests. For example, the Loan Defaults include:On July 7, 2025, Pathward conducted a routine compliance audit of the Debtor's loan account that revealed that the Debtor had failed to deliver as required at least $798,000 of cash receipts to the Lockbox Account since the time that Pathward had funded the Debtor under the Revolving Note.
>
> b. Pathward's July 7, 2025 compliance audit also revealed that there was an 18-day lag between the time that the Debtor received cash receipts that were due

    to the Lockbox Account and the time that the debtor deposited such cash receipts to the account lockbox.

   c. On August 11, 2025, the Debtor admitted to Pathward that it had received and never remitted to the Lockbox Account as required at least $1.6 million in cash receipts from credit card payments it had received.

   d. Causing the 100 percent ownership of the company to transfer from Ryan Joseph Sider to the Debtor's President, Michael Dennis Barwick without Pathward's consent which resulted in an improper change in control of the Debtor.

14.  The Debtor, acting through its President, Michael Dennis Barrick, used $250,000 of the Debtor's cash to acquire related entity called Ultrapak.

15.  After acquiring Ultrapak, the Debtor transferred inventory based on either an at-cost or at-a-loss valuation and reported a corresponding $540,000 receivable owed from Ultrapak to Pathward. The sale was not an arm's-length sale and improperly inflated the Debtor's reported receivables and borrowing base and misrepresented the nature and value of Pathward's Collateral.

16.  The Debtor's misrepresentation of the Ultrapak receivable induced Pathward to permit the debtor to exceed the Advance Formula. After recalculation of the Advance Founula less the Ultrapak receivable, the Debtor had exceeded its borrowing base by more than $900,000.

17.  To date, Pathward has also uncovered financial information of the Debtor that indicates that the Debtor was funding the boarding and care costs for a race horse belonging to the Debtor's principal to the tune of $12,5000 weekly for at least a 6-week period of 2025.

18. The Debtor also failed to provide the required financial statements and reports required under Articles 6.12 and 6.13 in the Credit Agreement.

*The Debtor's Post-Petition Conduct*

19. The Debtor commenced the Bankruptcy Proceeding without representation of legal counsel. Although the Debtor has since hired counsel to prevent dismissal of the Bankruptcy Proceeding, this set-back has delayed the case and resulted in the Debtor missing at least one week of payroll that was late to the Debtor's employees by a week.

20. On January 8, 2026, Pathward consented to the Debtor's use of cash collateral to fund payroll for week-ending January 2, 2026 and January 9, 2026 so that the Debtor could cure its missed payroll.

21. The Debtor also submitted its list of creditors without including Pathward, its largest and only secured creditor, in the Noticing Matrix.

22. I only learned about the Debtor's Bankruptcy Proceeding 3 days after the Petition Date, on January 2, 2026 when the Debtor contacted Pathward to request a release of funds since the Debtor was not able to meet its payroll obligations for the week-ending January 2, 2026.

23. Finally, on or about January 5, 2026, without notice to Pathward Pathward's read-only access to the Debtor's bank accounts was terminated, preventing Pathward from viewing and monitoring Debtor's bank account transactions.

*The Debtor's 13-Week Budget and Inventory Valuation*

24. I have personally reviewed the Debtor's proposed 13-week budget attached as Exhibit 1 (the "13-Week Budget") to the Debtor's *Emergency Motion for Order (I) Authorizing Debtor's Use of Cash Collateral Pursuant to 11 U.S.C. § 363 and Fed. R. Bank. Proc. 4001, and*

*(II) Directing Turnover of Estate Property Pursuant to 11 U.S.C. § 542; Memorandum of Points and Authorities in Support Thereof* [Doc 26].

25. The 13-week Budget does not match the Debtor's prepetition cashflow projections provided by the Debtor to Pathward prepetition.

26. The Debtor's projected revenues and expenses are not based on current operations and are not verifiable.

27. Additionally, the Debtor's inventory valuation is substantially overstated and includes stale, special order, and slow moving inventory that at best has a liquidation value of 15 to 20 percent of its book value.

### *The Declaration of the Debtor's Principal, Michael Dennis Barwick*

28. It is true that at times, when the Debtor exceeded its borrowing base formula Pathward did not advance funds to the Debtor and in those cases, Pathward was within its rights under the Credit Agreement to withhold funds. Pathward did not refuse to advance funds on all occasions when the Debtor exceeded its borrowing base and consented to allowed the Debtor to exceed its borrowing base up to $300,000 and then to $500,000 on the condition that the Debtor

hire a financial consultant. When the Debtor hired a financial consultant, Pathward allowed the Debtor to exceed the borrowing base by $500,000.

29. However, when Pathward consented to the Debtor exceeding the borrowing base, Pathward relied on the Debtor's borrowing base certification which included a $540,000 receivable from related entity, Ultrapak following the Debtor's transfer of inventory to Ultrapak. The use of a related entity receivable to calculate borrowing base is not permitted under the Loan Documents. Moreover, the amount of the receivable indicates that the Debtor transferred the applicable inventory to Ultrapak on an at-cost or at-a-loss valuation.

30. The Debtor's use of funds for purposes other than its operation were the cause of any disruption in vendor confidence, constrained inventory availability, and the impairment of the Debtor's ability to fully meet market demand.

31. As of the Petition Date, the Debtor's business was not sound, its financial reporting indicate that the Debtor had inflated its borrowing base with the $540,000 Ultrapak receivable enabling the Debtor to exceed its Advance Formula by $900,000. Moreover, it diverted at least $75,000 of its cash to expenses for its principal to pay a $12,500 weekly boarding expense for his race horse, an expense that is unrelated to the Debtor's business operation.

32. Based on the Debtor's history of conversion, fraud, dishonesty and gross mismanagement, there is cause to appoint a Chapter 11 trustee to protect Pathward's collateral and the bankruptcy estate.

33. Moreover, the Debtor's request for authority to use cash collateral should be denied until such time that a Chapter 11 trustee is appointed in this Bankruptcy Proceeding.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated: January 12, 2026

Jarrad W. LaCroix
Director of Portfolio
Pathward, National Association

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:
515 S. Figueroa St. 8th Floor Los Angeles, CA 90071

A true and correct copy of the foregoing document entitled: **DECLARATION OF JARAD W. LACROIX, DIRECTOR OF PORTFOLIO, ASSET BASED LENDING FOR PATHWARD, NATIONAL ASSOCIATION IN SUPPORT OF ITS MOTION FOR APPOINTEMENT OF CHAPTER 11 TRUSTEE AND MEMORANDUM OF LAW IN SUPPORT OF OBJECTION TO EMERGENCY MOTION FOR ORDER (i) AUTHORIZING DEBTOR'S USE OF CASH COLLATERAL PURSUANT TO 11 U.S.C. § 363 AND FED. R. BANK PROC. 4001, and (ii) DIRECTING TURNOVER OF ESTATE PROPERTY PURSUANT TO 11 U.S.C. § 542** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On *(date)* Jan. 12, 2026, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

- United States Trustee (LA)    ustpregion16.la.ecf@usdoj.gov
- Hatty K Yip    hatty.yip@usdoj.gov, hatty.k.yip@usdoj.gov
- Derrick Talerico  -  dtalerico@wztslaw.com
  zwicker & Associates, P.C. bknotices@zwickerpc.com

☐ Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL**:
On _____, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on 01-12-26, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.
The Honorable Julia B. Brand
Courtroom 1375
U.S. Bankruptcy Court
255 East Temple Street
Los Angeles, CA 90012

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| Jan. 12, 2026 | Rosemary Pinal | /s/ Rosemary Pinal |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

This form is mandatory. It has been approved for use in the United States Bankruptcy Court for the Central District of California.

October 2024                                    Page 4                                    F 2090-1.2.APP.NONRES.ATTY